ANGEL PÉREZ PIÑERO, demandante y recurrido, *v.* DEPARTAMENTO DE OBRAS PÚBLICAS DEL ESTADO LIBRE ASOCIADO, demandado y recurrente.

Número: R-75-281     Resuelto: 30 de noviembre de 1976

*Miriam Naveira de Rodón, Procuradora General,* y *Mario L. Paniagua, Procurador General Auxiliar,* abogados del recurrente; *Gustavo Wiscovitch,* abogado del recurrido.

### SENTENCIA

Se confirma la sentencia dictada por el Tribunal Superior, Sala de San Juan, en este caso el 31 de julio de 1975.

Así lo pronunció y manda el Tribunal y lo certifica el señor Secretario. El Juez Asociado Señor Rigau anunció la sentencia del Tribunal y emitió una opinión a la cual se unen el Juez Presidente, Señor Trías Monge, y el Juez Asociado Señor Irizarry Yunqué. Los Jueces Asociados Señores Dávila y Martín emitieron opiniones concurrentes. El Juez Asociado

Señor Díaz Cruz emitió una opinión disidente a la cual se unen los Jueces Asociados Señores Torres Rigual y Negrón García.

(Fdo.) Ernesto L. Chiesa

*Secretario General*

—O—

Opinión emitida por el Juez Asociado, Señor Rigau, a la cual se unen el Juez Presidente, Señor Trías Monge, y el Juez Asociado, Señor Irizarry Yunqué.

San Juan, Puerto Rico, 30 de noviembre de 1976

Como el Derecho es en tan gran medida una disciplina de hábito, de costumbre, de precedente, a poco que se hable de responsabilidad civil se piensa casi automáticamente en la responsabilidad basada en culpa o negligencia, llamada también aquiliana porque fue sancionada en Roma a instancias del tribuno Aquilius Gallus.[1]

Sin embargo, como se sabe, con el advenimiento y el vertiginoso desarrollo de la técnica y de la máquina se ha creado o reconocido legislativa y jurisprudencialmente áreas en donde la responsabilidad se basa en otras consideraciones. Así, por ejemplo, el que fabrica o vende vehículos de motor, aparatos televisores, medicinas y prácticamente cualquier artículo que la moderna técnica elabora y sobre la cual el comprador promedio es un lego, responde de la buena condición y seguridad del artículo. Tampoco se requiere ya el ele-

---

[1] El distinguido jurista español Don Antonio Hernández Gil ha comentado que si un ciudadano romano despertara del sueño de dos milenios el diálogo menos lleno de sorpresas que podría mantener con nosotros sería el relativo a muchas instituciones y reglas jurídicas. Podríamos hablar con él, dice el citado autor, en un lenguaje todavía común, por ejemplo, de la posesión, el usufructo, la herencia, etc.—"El Derecho Como Factor Cultural de Unidad," Conferencia dictada en el Club Siglo XXI de Madrid, publicado en *España, su Monarquía y Europa* (1974), pág. 121.

mento de culpa o negligencia en materia de compensación a obreros por accidentes del trabajo. En materia de accidentes automovilísticos dicho elemento va perdiendo vigencia según jurisdicción tras jurisdicción van adoptando planes de compensación en esos casos.

En el caso de autos la responsabilidad no está basada en culpa o negligencia, a tenor con lo dispuesto en el Art. 1802 del Código Civil, sino que está basada en otro precepto legal también vigente y que es igualmente una declaración legislativa de política pública, tan vinculante como el citado Art. 1802, por ser también *lex scripta*. Vamos primero a los hechos y luego al Derecho.

Mientras un camión descargado, conducido a velocidad prudente, discurría por la Carretera Núm. 887, que es una carretera pública de Puerto Rico, el pavimento de rodaje súbitamente se hundió, formándose un hoyo de aproximadamente metro y medio de profundidad.

Como resultado del accidente el vehículo resultó en una pérdida total, según las conclusiones de hecho no controvertidas del juez de instancia.

Demandaron al Departamento de Obras Públicas del Estado Libre Asociado el conductor lesionado y el dueño del camión. El tribunal encontró probado que el propietario del vehículo había invertido $11,000 en el camión dos meses antes del accidente. Mediante estipulación el conductor desistió, con perjuicio, de su reclamación y quedó en pie la del propietario del vehículo. El tribunal declaró con lugar la demanda en cuanto a este último y le concedió $10,000 por concepto de indemnización.

El único error que levanta el demandado consiste en sostener que incidió el tribunal al decidir que el Estado es responsable civilmente en este caso. El tribunal de instancia se basó en el Art. 404 del Código Político, 3 L.P.R.A. sec. 422. El error señalado no se cometió.

El texto de dicho Art. 404 es el siguiente:

"El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos."

Dicha disposición data del año 1902. Su actual vigencia no es ningún olvido legislativo—lo cual no podemos en forma alguna presumir—porque la misma fue enmendada en 10 de mayo de 1950, mediante la Ley Núm. 273 de esa fecha. El texto del año 1950 es el vigente. En virtud de la enmienda de 1950 donde decía Isla se escribió Estado Libre Asociado y donde decía Departamento de lo Interior se escribió Departamento de Obras Públicas. La parte sustantiva del artículo fue dejada igual al texto anterior.

Argumenta el Estado que el desperfecto en la carretera no era visible y que eso lo releva de responsabilidad. El defecto cardinal de dicho planteamiento es que la letra clara y precisa del Art. 404 no distingue entre desperfectos visibles y no visibles, ni exime al Estado en caso de desperfectos invisibles, como lo hace cuando los desperfectos son causados por los elementos y no hay tiempo suficiente para remediarlos antes del accidente.

Dicho artículo categóricamente hace responsable al Estado de los daños y perjuicios que se ocasionen a personas o a propiedades por desperfectos, falta de reparación o de protección suficientes en cualquier vía de comunicación perteneciente al Estado Libre Asociado, excepto donde *se pruebe* que los desperfectos fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos. En el caso de autos no se probó que los desperfectos hubiesen sido causados por la violencia de los elementos.

En *Rivera* v. *Pueblo*, 76 D.P.R. 404, 411 (1954), caso que envuelve el Art. 404, el origen de los daños fue precisamente

la situación que está exenta de responsabilidad por el propio Art. 404—la violencia de los elementos y la falta de tiempo suficiente para remediar o corregir el desperfecto. En aquella ocasión, debido a fuertes lluvias, se desprendió una piedra de una finca privada, más alta que la carretera, y al rodar cayó sobre un vehículo rompiéndolo y lesionando a varias personas. Allí "limitándonos a los hechos de este caso concluímos que no cometió error la Corte a quo al desestimar la demanda."

En *Morales Muñoz* v. *Castro*, 85 D.P.R. 288 (1962), sostuvimos, aumentando la cuantía, una sentencia que impuso responsabilidad al Estado al no proveer avisos adecuados de desvío en un tramo de carretera en construcción. Aunque el automóvil accidentado era conducido a 60 millas por hora el Tribunal concluyó que de haberse puesto los avisos el conductor pudo haber reducido la velocidad y evitado el accidente. Cuando se trata de obra, la reglamentación oficial en vigor exigía y exige que las señales de advertencias sean colocadas a las afueras de la obra y a 150 metros de cada extremo de la misma. 22 R.&R.P.R. sec. 46–223.

Allí dijimos, a la pág. 292, "La responsabilidad del Estado emana de lo dispuesto en el Art. 404 del Código Político." Expresamos que en aquella situación no era necesario determinar si la obra era inherentemente peligrosa, "pues la responsabilidad del Estado subsiste independientemente de esta circunstancia."

En *Resto* v. *P.R. Telephone Co.*, 97 D.P.R. 313 (1969), la compañía del teléfono contrató con Anastacio Ortiz la poda de unos árboles. Ortiz dejó un tronco o rama parcialmente sobre el área de rodaje de la carretera pública. Se determinó que dicha rama permaneció allí por aproximadamente treinta días, lo cual constituía tiempo suficiente para que el Estado la hubiese removido. Un automóvil le dio a la rama y la rama lesionó al demandante. Confirmamos la sentencia contra la

Telefónica y contra el Estado. Basamos nuestro fallo en el citado Art. 404 del Código Político. Dijimos, a la pág. 320:

"No erró pues el tribunal al responsabilizar al Estado Libre Asociado por la omisión negligente de su capataz, que permitió la existencia de tal obstáculo en la carretera por espacio de alrededor de treinta días."

De la propia existencia del Art. 404 del Código Político y de sus claros términos puede colegirse que este caso no se gobierna por el Art. 1802 del Código Civil y que no es elemento participante en el mismo el de la culpa o negligencia. Tampoco es correcto argumentar lo contrario porque mucho antes de aparecer en nuestro ordenamiento jurídico el citado Art. 404 del Código Político ya existía en Puerto Rico el Art. 1802 del Código Civil y si la intención legislativa hubiese sido el que situaciones como la del caso de autos se gobernasen por los conceptos del Art. 1802 no hubiese sido necesario crear el 404 del Código Político. Claramente se deseó establecer una política pública distinta para estos casos y a esos efectos se legisló. En casos de esta naturaleza prevalece el Art. 404 por la doble razón de que es posterior al 1802 y de que es una ley especial para cubrir situaciones especiales.

En vista de la letra clara y expresa del vigente Art. 404 del Código Político la responsabilidad del Estado es clara y no se cometió el error señalado. Confirmaría la sentencia recurrida.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Dávila.

San Juan, Puerto Rico, a 30 de noviembre 1976

Estoy de acuerdo en que procede confirmar la sentencia dictada por el Tribunal Superior por los fundamentos consignados por dicho tribunal.

Al declarar con lugar la demanda el tribunal de instancia determinó que "con posterioridad a la ocurrencia del acci-

dente y a eso de las 7:30 A.M. se pudo notar que la tubería de la Autoridad de Acueductos y Alcantarillados que discurría por debajo del pavimento de la carretera estaba rota y salía agua a gran presión. La prueba no estableció si la tubería estaba rota con anterioridad al accidente y el peso del vehículo al desplomarse ocasionó una avería mayor o si, por el contrario, fue el accidente el que ocasionó, por sí solo, la rotura de la tubería. Ninguna de las partes presentó prueba pericial, sobre ese ni sobre ningún otro aspecto."

Luego de hacer la anterior determinación de hecho el tribunal formuló la siguiente conclusión de derecho con la cual estoy de acuerdo en su totalidad:

"Si bien es cierto, como se afirma en *Rivera* v. *Pueblo,* 76 DPR 404, 408, que el Estado no es garantizador en forma absoluta de la seguridad de las personas que utilizan las carreteras públicas, se desprende de la fraseología del Art. 404 del Código Político que el Estado responde por los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o de protección suficiente para el viajero en cualquier vía de comunicación pública salvo que se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos. Es decir, es el propio Estado el obligado a probar que los desperfectos fueron ocasionados por fuerza mayor y que no hubo tiempo suficiente para remediarlos. Estamos frente a un caso de *lex scripta* donde no rigen los principios generales de negligencia sino que una vez establecido el defecto en la carretera y los daños se invierte el peso de la prueba viniendo entonces obligado el Estado a traer prueba exculpativa limitada a los aspectos de fuerza mayor e insuficiencia de tiempo para remediar la situación.

En la situación ante nuestra consideración, habiéndose establecido por la parte demandante que ocurrió el desperfecto y que éste le ocasionó daños, incumbía al Estado probar la existencia de fuerza mayor de que habla el estatuto. Como no se trajo dicha prueba, el Estado, a nuestro juicio, es responsable por los daños ocasionados."

El Estado, para prevalecer, venía obligado a establecer, si ése era el caso, que durante la noche anterior al accidente un tubo del acueducto sufrió una avería, que no hubo oportunidad de arreglarlo y que el agua que salía de la cañería ocasionó que el firme de la carretera cediera. Como el Estado no presentó tal prueba, procedía declarar con lugar la demanda.

—O—

Opinión concurrente del Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 30 de noviembre de 1976

El Art. 404 del Código Político constituye una marcada excepción a los principios que rigen la responsabilidad por culpa extra contractual que adoptamos a través de nuestro Código Civil. 31 L.P.R.A. sec. 5142 *et seq.* A la doctrina de responsabilidad sin culpa se le ha llamado también "teoría de riesgo creado" o del "riesgo jurídico". Esta sostiene que ningún daño debe quedar sin indemnización y ni siquiera admite el caso fortuito como exonerante.[1] En otras palabras, la propia ley atribuye responsabilidad no obstante el cuidado debido. Es un deber absoluto de cuidado.

Esta norma de responsabilidad sin culpa la recoge el Art. 404 de nuestro Código Político. Impone el deber de garantizar la seguridad de las carreteras que ha hecho accesibles al público. Basta mostrar que el deber objetivo de cuidado no ha sido cumplido. Ante el hecho objetivo del daño cede el hecho subjetivo del cuidado prudente y razonable. Se ha dicho que aunque la teoría es un retroceso a períodos primitivos, su motivación es altruista y de profundo sentido social.[2]

El Art. 404 provee una defensa a la obligación absoluta del Estado cuando los desperfectos son causados por la vio-

---

[1] *La Responsabilidad sin Culpa en España,* Rev. General de Leg. y Juris., 1945, Tomo 177, pág. 561.

[2] *Op. cit.*

lencia de los elementos y no hubo tiempo suficiente para remediarlos. Nótese que la causa "fortuita", que se contrae más bien a hechos humanos, no está excluida sino solamente las causas surgidas por la violencia de los elementos o lo que sería lo mismo, "fuerza mayor". Es evidente que el Art. 404 impone el peso de la prueba al Estado para justificar la defensa de falta de tiempo suficiente para remediar el desperfecto. En el caso ante nos el Estado no ofreció prueba eximente, luego hay que presumir que el daño no fue ocasionado por la violencia de los elementos.

Es conveniente señalar que el Art. 404, al aprobarse en el año 1902, constituyó una excepción a la inmunidad del Estado a las reclamaciones de los ciudadanos por los daños y perjuicios sufridos por acción u omisión del Estado. No fue hasta el año 1916 que la Legislatura autorizó las demandas contra el Estado por (1) acciones por daños y perjuicios basados sobre contratos y (2) acciones para reinvindicar propiedad inmueble o mueble o derechos sobre la misma. Ley Núm. 76, 13 de abril de 1916. En 1928 se enmendó para eliminar el requisito de que los daños y perjuicios estuvieren basados en contratos, al ampliarse su alcance para cubrir cualquier caso de daños y perjuicios. Ley Núm. 11, 18 de abril de 1928. No obstante la existencia del Art. 404 del Código Político, el legislador prefirió que éste continuara en vigor con respecto a los daños provenientes del uso de las carreteras. Debe aclararse, sin embargo, que la enmienda de 1928 no afectaba las limitaciones impuestas por el Código Civil requiriendo que el Estado debía obrar por mediación de un agente especial para ser responsable. Arts. 1802, 1803, Código Civil de Puerto Rico, ed. 1902. Pero en 1955 el Art. 1803 del Código Civil fue enmendado para ampliar el alcance de la responsabilidad del Estado a la que tendrá un ciudadano particular en las mismas circunstancias y condiciones. Ley Núm. 104 aprobada en 29 de junio de 1955; 31 L.P.R.A. sec. 5142. Se mantuvo la exención de responsabilidad si el

Estado probare haber empleado toda la diligencia de un buen padre de familia para prevenir el daño. *Id.* Sin embargo, es significativo que la responsabilidad absoluta del Art. 404 del Código Político quedó intacta.

Si la responsabilidad que impone el Art. 404 al Estado es o no gravosa, considerando los miles de kilómetros de carreteras que debe mantener, es una cuestión a determinar por el legislador y no por el juzgador. Las cuestiones de política pública deben ser sopesadas por el legislador ya que el proceso deliberativo tiene que necesariamente tomar en cuenta si el perjuicio económico de los daños por "desperfectos, falta de reparación o de protección suficientes para el viajero" en las carreteras de Puerto Rico debe recaer sobre el pequeño número de personas que de hecho sufren los daños o si no es más justo y equitativo que los compartan todos los que se benefician del uso de las carreteras mediante una indemnización por parte del Estado. Esa determinación la hizo ya el legislador y no es función de este Tribunal el violarla.

Confirmaría, pues, la sentencia recurrida.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz en la que concurren los Jueces Asociados Señores Torres Rigual y Negrón García.

San Juan, Puerto Rico, a 30 de noviembre de 1976

Este caso ilustra el valor y sabiduría del principio universal de que a nadie se le ha de imponer responsabilidad por lo que totalmente desconoce, máxime cuando no bastarán para librarlo de su ignorancia ni las más avanzadas técnicas ni desarrollos científicos.

Frente a un camión que rodaba por la Carretera Estatal Núm. 887, que es una vía pública de tránsito en buen estado de conservación, se abrió la tierra inesperada y súbitamente

formándose un hoyo de unos cinco pies de profundidad donde cayeron conductor y vehículo resultando en la pérdida total de éste que la sala de instancia indemnizó condenando al Estado al pago de $10,000.00 a su dueño.

Disiento de la opinión del Juez Rigau que al proponer la confirmación de la sentencia recurrida invoca la letra del Art. 404 del Código Político (3 L.P.R.A. sec. 422) que dispone:

"El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas, o propiedades por desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos."

Al imponer responsabilidad al Estado porque de pronto se abra la tierra en algún punto de nuestro sistema vial estaríamos sentando doctrina de responder por lo desconocido, lo imprevisible y hasta por lo misterioso. Ni aun los geólogos pueden anticipar los estremecimientos telúricos en esta Isla situada al borde de la Trinchera del Atlántico por lo que resulta oneroso e irreal exigir del Departamento de Obras Públicas que adivine cuándo y dónde se va a hundir un pedazo de patria. Los hundimientos súbitos no responden únicamente a la trepidación sísmica; son causados también por el efecto acumulativo de corrientes de agua subterránea y de superficie desviadas por la construcción que satura el país, por la vibración del tráfico vehicular, por las inundaciones y aun por las lluvias normales. De esta realidad notoria e indisputable podemos tomar conocimiento judicial. Art. 36(8) Ley de Evidencia (32 L.P.R.A. sec. 1711(8)). Se puede y se debe exigir responsabilidad a quien tiene en su mano evitar el acto u omisión dañosa, pero no a quien carece de medio alguno para advertirlo o anticiparlo.

Es a la luz de estas realidades físicas irreducibles que debe leerse el citado Art. 404 que al fijar responsabilidad civil en el Estado por daños originados en "desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación" se refiere a desperfectos *conocibles* o revelados, porque sólo contra éstos opera la defensa inserta en el estatuto más adelante de que "no hubo tiempo suficiente para remediarlos." Responde el Estado bajo el citado Art. 404 sólo cuando no repara o remedia a tiempo el desperfecto. En el fluir natural de la razón, para reparar o remediar primero se ha de conocer o advertir lo que necesita reparación o remedio. El desperfecto cobra realidad y existencia cuando muestra sus feos contornos o aun cuando sin mostrarse a los ojos se anuncia irrumpiendo en el campo de la previsibilidad. Un puente mal diseñado puede ser agradable a la vista pero de tenebrosa potencialidad para el ingeniero que conoce su defecto. El desperfecto se materializa en el conocimiento, no exclusivamente visual, de quien ha de repararlo. Mientras no haya ese conocimiento inducido, la condición peligrosa yace en un campo abstracto e ignoto donde no operan las normas de responsabilidad civil. Hasta tanto no se revela el desperfecto como tal no nace la responsabilidad pública.

La base verdadera de la negligencia está en la conducta que ha de identificarse como capaz de generar irrazonable peligro para los demás. Pero esa conducta no es un estado de la mente, sino que ha de informarse por una realidad externa revelada. Negligencia, dice Prosser, es cuestión de peligro conocible de daño. *Law of Torts*, pág. 145, Cuarta Edición (1971). Y añade: "Negligencia es conducta que cae debajo del estándar establecido por ley para la protección de otros contra un irrazonable riesgo de daño. La idea de riesgo necesariamente implica un peligro conocible, basado en algún conocimiento de los hechos existentes, y la inferencia razona-

ble de que el daño puede ocurrir.[1] Riesgo es un peligro aparente, o que debería ser aparente, para el que está en la posición del actor. La culpa en su conducta ha de estimarse a la luz de las posibilidades aparentes para él al tiempo [del suceso], y no en apreciación retrospectiva 'con la sabiduría que nace del evento'." (2) *Ibid*, pág. 146.

El Estado recurrente se confrontó en este caso con un peligro súbito, inesperado en tiempo y lugar, que no le permitió ejercer la acción protectora del viajero que es cuanto exige la ley. No hay diferencia en el ámbito de responsabilidad pública entre la peña que se desprende y al deslizarse hacia la carretera cae sobre el vehículo matando a dos niños, (*Rivera* v. *Pueblo*, 76 D.P.R. 404 (1954)), y la superficie que de pronto se quiebra frente al camión que avanza. En ambos el evento causante del daño crea una situación peligrosa instantánea en una vía pública que hasta el momento mismo del siniestro era segura. Ni en *Rivera* ni en el caso de autos hubo indicio previo que creara en el demandado la expectación o espera de lo que habría de ocurrir. Ese factor de lo desconocido que exime de responsabilidad al Estado en este caso fue ya proyectado por este Tribunal por voz del Juez Pérez Pimentel al expresar en *Rivera* v. *Pueblo*, supra: "Si bien el desprendimiento de la roca en cuestión desde el sitio donde se hallaba—a 96 metros del centro de la carretera—era algo que estaba dentro del campo de las posibilidades, difícilmente puede sostenerse que El Pueblo pudo prever las probabilidades de tal desprendimiento y menos aún que las razonables y naturales consecuencias de permitir que dicha roca permaneciera en el sitio donde originalmente se hallaba serían su súbito desprendimiento y el consiguiente

---

(1) Art. 1058 Código Civil—"Fuera de los casos expresamente mencionados en la ley, y de los en que así lo declare la obligación, nadie responderá de aquellos sucesos que no hubieran podido preverse, o que previstos, fueran inevitables." 31 L.P.R.A. sec. 3022.

(2) Cardozo, C. J., en *Greene* v. *Sibley, Lindsay & Curr Co.*, 257 N.Y. 190; 177 N.E. 416.

daño a un semejante, especialmente si se toma en considera-
ción la falta de conocimiento por parte de El Pueblo del es-
tado en que se encontraba la roca desprendida y la ausencia
total de prueba en el récord de que corrientemente ocurrie-
ran desprendimientos similares en ese sitio y de lo cual tenía
el demandado algún conocimiento." *Ibid.* pág. 409.

A los fines de responsabilidad del Estado bajo el Art. 404
del Código Político "desperfecto" es únicamente el *conocible*,
aquella falta o condición peligrosa en la vía pública que ha
cobrado existencia real perceptible por un tiempo razonable
dentro del cual pueden y deben los empleados de Obras Pú-
blicas tomar las medidas para corregirla y proteger a los
que transitan por la carretera.

El suceso que causó la pérdida del camión del recurrido
fue un accidente fortuito, uno de tantos riesgos del camino
como derrumbes, rayos, desprendimientos y patinazos im-
previsibles producidos por fuerzas fuera del control del de-
mandado recurrente y que éste no viene obligado a cubrir
como asegurador.

El anuncio de la nueva figura del "desperfecto instan-
táneo", descarta todo principio de razonabilidad y hace al
Estado responsable por sucesos engendrados en el arcano
misterioso, (³) abrazándose indebidamente a una visión de
responsabilidad objetiva (estricta o absoluta) en el Art. 404
del Código Político, que si bien se ajusta para quien maneja
dinamita o plantas nucleares, no ha lugar en la esfera de
administración, conservación y policía de carreteras regulada
por la Ley Núm. 54 de 30 de mayo de 1973 (9 L.P.R.A. sec.
2101 y ss.). Puig Brutau llama al principio de responsabili-
dad estricta "supervivencia" y "fenómeno peculiar del De-

---

(³) Determinó el juez de instancia que "En el lugar del accidente no
habían [*sic*] signos externos que implicasen un estado de peligrosidad en
dicho sitio; [que] la prueba de ambas partes estableció que la carretera, en
las proximidades del sitio del accidente, aparentaba estar en buenas con-
diciones."

recho primitivo." (*Fundamentos de Derecho Civil*, Ed. 1956, Tomo 2, Vol. 2, págs. 677, 679) y al rechazar su aplicación ciega e indiscriminada se une a Castán en su magistral advertencia: "en realidad son los Tribunales los que han de resolver las cuestiones derivadas del nexo causal, guiándose más que de teorías abstractas, del criterio que. en cada caso puede conducir a una solución justa." *Ibid*, pág. 685; Castán Tobeñas, *Derecho Civil Español*, Tomo 4, Novena Ed. (1961), pág. 853.

También se muestra liberado del dogma el criterio jurídico norteamericano, reflejo auténtico del país del que adquirimos dicho Art. 404, recogido en Blashfield: "Una autoridad de carreteras está obligada a anticipar lo que es razonable y probable, y no lo remotamente posible. La regla general relativa al deber de construir y mantener calles y carreteras de manera que resulten seguras para el viajero excluye responsabilidad por consecuencias derivadas de eventos raros o extraordinarios." *Automobile Law & Practice*, Tercera Ed., Vol. 4, sec. 161.22 (pág. 340); *Roberts* v. *Town of Eaton*, 144 N.E. 667; *City of Dallas* v. *Maxwell*, 248 S.W. 667.

El tipo de evento súbito e inesperado, el *desperfecto instantáneo* que motiva este recurso, es riesgo propio del contrato de seguro. El derecho de licencia (tablilla) no puede concebirse con naturaleza de prima que una vez pagada obligue al Estado como asegurador de cuanto suceso ocurra en las vías públicas.

Ya este Tribunal señaló la recta inteligencia del Art. 404 del Código Político en *Rivera* v. *Pueblo*, supra. No puede exigirse responsabilidad a quien no comparte el guardado y misterioso secreto generador del daño, ni reparar con dinero de los contribuyentes el riesgo que en el orden jurídico y social propiamente ha de cubrirse con póliza de seguro.

Revocaría la sentencia recurrida.