AC-97-47                                                          1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| IRMA ALEMAN MARTINEZ Y OTROS<br>    Demandantes-apelantes<br><br>    .V<br><br>ESTADO LIBRE ASOCIADO DE P.R.<br><br>    Demandado-apelado | Certiorari<br><br>TSPR98-51 |

Número del Caso: AC-97-47

Abogados Parte Demandante Apelante: Lcdo. Hugo Rodríguez Díaz

Abogados Parte Demandada Apelada: Hon. Carlos Lugo Fiol
Procurador General

Lcda. María Adaljisa Dávila
Procuradora General Auxiliar

Abogados Parte Interventora:

Tribunal de Instancia: Superior, Sala de Caguas

Juez del Tribunal de Primera Instancia: Hon. Bruno Cortés Trigo

Tribunal de circuito de Apelaciones: Circuito Regional VI

Juez Ponente: Hon. Pesante Martínez

Fecha: 5/1/1998

Materia: Daños y Perjuicios

    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correciones del
    proceso de compilación y publicación oficial de las
    decisiones del Tribunal. Su distribución electrónica se hace
    como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Irma Alemán Martínez,
Gianessa Alicea Alemán

    Demandantes-Apelantes


       v.                                AC-97-47


Estado Libre Asociado de
Puerto Rico

    Demandado-Apelado




RESOLUCION



San Juan, Puerto Rico, a 1ro. de mayo de 1998



      Acogido el recurso radicado como uno de certiorari, se provee no ha lugar al mismo.

      Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.  La Juez Asociada señora Naveira de Rodón y los Jueces Asociados señores Hernández Denton y Fuster Berlingeri expedirían.  La Juez Asociada señora Naveira de Rodón emitió un Voto Particular Disidente.



                  Isabel Llompart Zeno
           Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Irma Alemán Martínez y
Gianessa Alicea Alemán

    Demandantes-apelantes

      v.                                    AC-97-47

Estado Libre Asociado de
Puerto Rico

    Demandado-apelado

Voto particular disidente emitido por la Juez Asociada señora Naveira de Rodón

San Juan, Puerto Rico, a 1ro. de mayo de 1998

Una vez analizado el presente recurso, la mayoría d este Tribunal decidió denegarlo mediante una resolución. Po considerar que la actuación del Tribunal de Circuito d Apelaciones (Tribunal de Circuito) fue errónea al determina que a una acción instada al amparo del Artículo 404 de Código Político de 1902, según enmendado, 3 L.P.R.A. sec 422, le aplican los límites de cuantía impuestos por la Le Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A sec. 3077 et seq., expediríamos el recurso. Disentimos pues, de la posición adoptada por la mayoría. Expondremo brevemente nuestro criterio.

I

El 5 de enero de 1992 ocurrieron unas fuertes lluvias que provocaron la subida de las aguas del Río La Plata. En consecuencia, la corriente de dicho río destruyó el puente localizado en la Carretera Núm. 173, Kilómetro 3, de Cidra. El Gobierno del Estado Libre Asociado (E.L.A.) no cerró esta carretera ni fijó los avisos adecuados que alertaran al que transitara por dicha vía de la inexistencia del puente.

El 4 de mayo de 1992, ciento veinte (120) días después de destruirse el puente, el Sr. Hernán Alicea Rodríguez transitaba por la Carretera Núm. 173. Como no había vallas protectoras ni avisos adecuados, el señor Alicea Rodríguez se precipitó por el lugar donde estaba el puente, cayendo unos treinta (30) pies aproximadamente. Fue llevado al Centro de Diagnóstico y Tratamiento de Cidra, desde donde fue referido al Hospital Regional de Caguas. Falleció unas seis horas después de ocurrir el accidente.

La viuda del occiso y su hija instaron una demanda contra el E.L.A. Reclamaron los daños y perjuicios sufridos por ellas como consecuencia de la muerte del señor Alicea Rodríguez, además del lucro cesante. Asimismo, la hija Gianessa Alicea Alemán reclamó una partida, en acción hereditaria, por los sufrimientos y angustias mentales de su padre desde el accidente hasta el momento de su muerte.

En su contestación a la demanda, el E.L.A. levantó varias defensas afirmativas. Una de éstas fue que las reclamaciones excedían los límites impuestos por la Ley Núm. 104, supra, en acciones donde el E.L.A. es demandado en daños y perjuicios.

Una vez celebrado el juicio, el 1ro de abril de 1997 el Tribunal de Primera Instancia dictó sentencia. Declaró con lugar la demanda presentada y determinó que la responsabilidad del E.L.A. emanaba del Artículo 404 del Código Político, supra. Asimismo, resolvió que a esta

disposición legal no le aplicaban los límites de cuantía establecidos por el legislador.[1]

Inconforme con esta determinación, el E.L.A. presentó un recurso de apelación en el Tribunal de Circuito. Como único error, señaló que a las acciones instadas bajo el Artículo 404 del Código Político, supra, le aplican los límites de responsabilidad cuando el E.L.A. es parte, según establecidos en la ley.

El 29 de agosto de 1997, el Tribunal de Circuito dictó una sentencia, mediante la cual revocó el dictamen del foro de instancia con relación a las cuantías otorgadas. Resolvió que la Ley Núm. 104, supra, es un estatuto de carácter general que incluye todas las reclamaciones de daños y perjuicios que se presentan en contra del E.L.A. Por consiguiente, determinó que los límites de cuantía aplican a las acciones instadas bajo el Artículo 404 del Código Político, supra. Devolvió el caso al foro de instancia para que éste modificara las sumas otorgadas.

Oportunamente, las demandantes presentaron ante nos un recurso de apelación, que fue acogido como uno de certiorari, por ser éste último el indicado. Plantearon la comisión de un solo error, a saber:

> Erró el Tribunal de Circuito de Apelaciones al concluir que los límites de responsabilidad contenidos en la Ley [Núm.] 104 de 29 de junio de 1955, según enmendada[,] aplican a acciones bajo el Artículo 404 del Código Político de Puerto Rico.

A continuación discutiremos los fundamentos por los cuales entendemos se debe expedir el certiorari presentado.

II

---

[1] Específicamente, concedió las siguientes cantidades: a la señora Alemán Martínez, la suma total de ciento setenta y cinco mil dólares ($175,000) (cien mil dólares [$100,000] por los sufrimientos y angustias mentales y setenta y cinco mil dólares [$75,000] por el lucro cesante); y a la joven Gianessa Alicea Alemán, la suma total de doscientos mil dólares ($200,000) (cien mil dólares [$100,000] por los sufrimientos y angustias mentales propios, veinticinco mil dólares [$25,000] por los sufrimientos y angustias mentales de su padre y setenta y cinco mil dólares [$75,000] por el lucro cesante).

La doctrina de la inmunidad del soberano ha sufrido transformaciones a lo largo de los siglos. La tendencia moderna ha sido limitarla y hasta eliminarla. Según varios comentaristas, por la restricción lenta y progresiva que ha sufrido la inmunidad soberana, ésta ha perdido su razón de ser. Mario J. Pabón Cátala, Comentarios en torno a la doctrina de inmunidad del Estado: Piñeiro v. E.L.A., 45 Rev. Jur. U.P.R. 79, 92 (1976), siguiendo a Jaffe, Suits v. Governments and Officers: Damage Actions, 77 Harv. Law Review 209, 238 (1963). De otra parte, también se ha dicho que las sentencias dictadas en contra del Estado no son la causa de los problemas económicos del gobierno. Más bien, es conveniente para los ciudadanos y para el Estado que no existan límites de cuantía. Fernando J. Bonilla Ortiz, Los límites económicos en las demandas contra el Estado, 54 Rev. Jur. U.P.R. 761, 771 (1985). Entendemos que el Estado debe responder de igual manera que cualquier persona, ya sea natural o jurídica, por las consecuencias de sus actos.

En nuestro ordenamiento jurídico, el Tribunal Supremo federal resolvió que el gobierno de Puerto Rico podía invocar la inmunidad del soberano a su favor. Porto Rico v. Rosaly, 227 U.S. 270 (1913). Por esto, en 1916 se aprobó una ley que permitía las demandas contra el Estado en pleitos de reivindicación de bienes muebles o inmuebles o derechos sobre los mismos, y por daños y perjuicios basados en contratos. Ley Núm. 76 de 13 de abril de 1916, 1916 Leyes de Puerto Rico 155-157. Esta ley no imponía ningún límite de cuantía. Para poder demandar al Estado en daños y perjuicios, se tenía que utilizar el mecanismo de leyes especiales. Defendini Collazo et al. v. E.L.A., Cotto, Op. de 15 de julio de 1993, 134 D.P.R. ___ (1993), 93 J.T.S. 119. En 1928, el legislador aprobó la Ley Núm. 11 de 18 de abril, donde se autorizó a demandar al Estado por reclamaciones de daños y perjuicios en general. Esta ley tampoco proveyó un límite a las cuantías que se podían conceder. Id.

En el 1955 se aprobó una ley de renuncia a la inmunidad soberana que autorizaba de forma general las demandas contra el Estado: la Ley Núm. 104 de 29 de junio de 1955, supra, conocida como la Ley de Pleitos contra el Estado Libre Asociado de Puerto Rico, que derogó la Ley Núm. 76, supra. Este estatuto dispuso un límite de cuantía compensable por el Estado y estableció una serie de situaciones que quedaban excluidas de esta renuncia. Defendini Collazo et al. v. E.L.A., Cotto, supra.

Aunque estas leyes se aprobaron a partir de 1916, antes de esta fecha el gobierno de Puerto Rico ya había renunciado a parte de su inmunidad como soberano. Nos referimos a los Artículos 32 y 404 del Código Político, 3 L.P.R.A. secs. 183 y 422.[2] En específico, el Artículo 404, supra, dispone que:

> [e]l Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Transportación y Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos.

Con relación a esta disposición, en Santiago v. Pueblo, 74 D.P.R. 211 (1952), dijimos que la Ley Núm. 76, supra, por ser un estatuto de consentimiento, no había derogado la responsabilidad que aceptó el Estado por virtud del Artículo 404 del Código Político, supra. Santiago v. Pueblo, supra, escolio 3. A pesar de que este Artículo es del 1902, el que siga vigente no es producto de un olvido legislativo, ya que ha sido enmendado subsiguientemente en varias ocasiones.[3] Pérez Piñero v. E.L.A., 105 D.P.R. 391, 394 (1976) (Opinión emitida por el Juez Asociado señor Rigau a la cual se unieron el entonces Juez Presidente señor Trías Monge y el Juez Asociado señor Irizarry Yunqué). Según

---

[2] El Artículo 32, supra, se añadió mediante la Ley Núm. 81 de 14 de marzo de 1912, y el Artículo 404, supra, es ley desde que se redactó el Código Político en 1902.

[3] Se enmendó mediante las siguientes leyes: la Ley Núm. 273 de 10 de mayo de 1950, la Ley Núm. 6 de 24 de julio de 1952, y el Plan de Reorganización Núm. 6 de 1971.

establece el Juez Rigau en su ponencia, mediante el Artículo 404 del Código Político se intentó implantar una política pública distinta para esos casos y por eso se legisló. Id., pág. 396.

Al confrontarnos nuevamente con la necesidad de interpretar el Artículo 404, en Publio Díaz v. E.L.A., 106 D.P.R. 854 (1978), a la página 862, resolvimos que éste "[c]onstituye el precepto especial a utilizarse para evaluar acciones por daños que se ocasionen a personas o propiedades en las vías públicas estatales, cuando los mismos fuesen motivados por cualesquiera de estas condiciones: 1) desperfectos; 2) falta de reparación; 3) falta de protección suficientes para el viajero...". (Enfasis nuestro.)[4]

Notamos que, a través del desarrollo de este estatuto, el legislador nunca le ha impuesto directamente límites de cuantía como condición a la renuncia de la inmunidad del soberano.[5] Más aún, al aprobarse la Ley Núm. 104 de 1955, supra, sobre autorización de pleitos contra el Estado, el legislador dispuso expresamente que dicha ley no aplicaría a las acciones para las cuales existiera una legislación específica. Así, dispuso que: "[n]ada en las secs. 3077 et seq. ... afectará las acciones sobre recobro o reintegro de contribuciones, expropiaciones y todas aquéllas para las que existe legislación

---

[4] En este caso no fue necesario entrar a determinar si aplicaban o no los límites impuestos por la Ley Núm. 104, supra, ya que la cuantía concedida luego de aplicar las normas de negligencia comparada resultó ser menor que los límites dispuestos por la ley. En específico, se determinó que las dos víctimas del accidente habían sido veinticinco por ciento (25%) negligentes. En consecuencia, se redujo la compensación que recibieron los herederos por los sufrimientos y angustias mentales de las víctimas (ya que éstas murieron en el accidente). Asimiso, se redujo la cantidad otorgada a los demandantes por concepto de lucro cesante y daños y angustias mentales propios. La cuantía de los daños se calculó según las normas establecidas en Torres v. A.F.F., 94 D.P.R. 314 (1969) y Quintana Martínez v. Valentín, 99 D.P.R. 255 (1970). Debemos destacar que este último caso fue revocado en Torres Pérez v. Medina, 113 D.P.R. 72 (1982), aunque parte de su doctrina se reinstaló en Miranda v. E.L.A., Op. de 7 de diciembre de 1994, 137 D.P.R. ___ (1994), 94 JTS 152, págs. 526-27.

[5] En las enmiendas hechas por el legislador en 1950, 1952 y 1971, no se incluyó ningún límite de cuantía.

específica, las que seguirán rigiéndose por las leyes aplicables...". (Enfasis nuestro.)  Art. 4 de la Ley Núm. 104, 32 L.P.R.A. sec. 3079.

De otra parte, la Ley Núm. 104, supra, también incluyó en su Artículo 11, una disposición derogatoria, que lee así:

> Queda derogada la ley número 76 de 13 de abril de 1916, según ha sido enmendada, así como toda otra ley o parte de ley que a ésta se oponga; no obstante lo anterior dicha ley quedará en vigor únicamente en cuanto a los procedimientos judiciales que ahora estén pendientes bajo sus disposiciones y hasta que queden terminados.

## III

En su sentencia, el Tribunal de Circuito resolvió que la Ley Núm. 104, supra, por ser un estatuto de carácter general y posterior al Artículo 404 del Código Político, supra, incluía todas las reclamaciones por daños y perjuicios en contra del Estado.  Al llegar a esta conclusión, procedió a resolver que a tenor con la disposición derogatoria antes transcrita, los límites de cuantía le aplican a las acciones instadas contra el Estado al amparo del Artículo 404 del Código Político, supra.  No avalamos este razonamiento.

Lo que procede, pues, es armonizar los Artículos 4 y 11 de la Ley Núm. 104, supra, con el Artículo 404 del Código Político, supra.  El Artículo 11 derogó expresamente toda ley que se opusiera a la Ley Núm 104, supra.  Por su parte, el Artículo 4 dispuso que la Ley Núm. 104 no aplicaría a las acciones para las que existe una legislación en específico y que éstas se seguirían rigiendo por las leyes aplicables. El Artículo 404 del Código Político, supra, es una legislación específica, vigente con anterioridad a la promulgación de la Ley Núm. 104, supra, que constituyó una renuncia sin límites a la inmunidad del soberano.  Es por lo tanto, una de las situaciones previstas por el Artículo 4 de dicha ley.  En consecuencia, la Ley Núm. 104, supra, no le es aplicable.  Después de todo, la norma es que a menos que no se especifiquen condiciones y limitaciones, la renuncia a la inmunidad soberana es incondicional, es decir, el Estado respondería por sus actos de igual forma y manera que cualquier persona.

Obviamente, la intención legislativa no fue limitar ni cambiar el tipo de renuncia a la inmunidad del soberano que ya había concedido sin imponer condición alguna en el Artículo 404 del Código Político, supra. Este Artículo es claro. Nada de lo allí dispuesto o de lo expuesto en la Ley Núm. 104, supra, tiende a indicar que la intención del legislador fue que se aplicaran los límites de cuantía.[6] El historial legislativo de la Ley Núm. 104, supra, tampoco lo refleja. Interpretar que le aplican los límites de cuantía sería forzado y en contravención de las normas interpretativas establecidas en el Código Civil. En específico, el Artículo 14 de dicho Código, 31 L.P.R.A. sec. 14, dispone que "[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Al interpretar esta disposición, hemos establecido que el alcance del lenguaje sencillo y absoluto de un estatuto no puede ser restringido al interpretarlo como que provee algo que el legislador no intentó proveer. Si así lo hiciéramos, estaríamos invadiendo las funciones de la Asamblea Legislativa. Caguas Bus Line v. Sierra, Comisionado, 73 D.P.R. 743, 750 (1952). Además, véase: Mun. San Juan v. Banco Gub. Fomento, Op. de 21 de mayo de 1996, 140 D.P.R. ___ (1996), 96 JTS 73, págs. 1144-45; Rojas v. Méndez & Co., Inc., 115

---

[6] Según esta ley, el Estado autorizó a demandarlo en las siguientes situaciones:

1) acciones de daños y perjuicios a la persona o la propiedad causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia.

2) Acciones para reivindicar propiedad mueble e inmueble, o derechos sobre las mismas, con o sin resarcimiento de perjuicios por los daños causados en dicha propiedad o por sus rentas y utilidades y para deslinde de finca rústica.

3) Acciones civiles en que la cuantía reclamada no exceda de setenta y cinco mil (75,000) dólares de principal, y que se funden en la Constitución, o en cualquier ley de Puerto Rico, o en cualquier reglamento de algún departamento o división del Estado, o en algún contrato expreso o tácito con el Estado. 32 L.P.R.A. sec. 3077.

D.P.R. 50, 54 (1984); Ferretería Matos, Inc. v. P.R. Tel. Co., 110 D.P.R. 153, 156-57 (1980).

En consecuencia, no podemos extender la Ley Núm. 104, supra, limitando la compensación que los ciudadanos reciben por los daños que le causa el Estado.[7]

El Estado puede renunciar a su inmunidad condicional o incondicionalmente. Para poder determinar qué tipo de renuncia se ha hecho, hay que acudir a la letra de la ley. Si nada se dice, ésta es incondicional. Existen ciertas situaciones, que utilizaremos analógicamente y a manera de ejemplo, donde el Estado ha renunciado a su inmunidad como soberano sin imponer o especificar condición alguna a su renuncia, o ha impuesto condiciones específicas aplicables a esa situación en particular.

IV

En primer lugar, el Estado implanta su política pública y actúa a través de sus funcionarios, departamentos, instrumentalidades, agencias y corporaciones públicas, entre otros. A algunos de ellos, el Estado les ha conferido la facultad de demandar y ser demandados. Usualmente esta facultad de ser demandado no está condicionada. Al provenir la renuncia de inmunidad soberana de otro estatuto, a éstos no les aplica la Ley Núm. 104, supra.[8] El Estado, dentro de la facultad que tiene para renunciar a su inmunidad soberana, puede hacerlo con o sin limitaciones. La Ley Núm. 104, supra, constituye la ley de renuncia de inmunidad soberana general y está condicionada, tanto en cuantías como en situaciones. Las demás leyes de renuncia a la inmunidad soberana

---

[7] En nuestra investigación, no hemos encontrado caso alguno en que este Tribunal se haya pronunciado con respecto a la aplicación de los límites de cuantía (establecidos en la Ley Núm. 104) al Artículo 404 del Código Político. En Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702 (1990), esto se alegó como error, pero revocamos al foro de instancia utilizando otros argumentos. Nunca entramos a discutir este señalamiento.

[8] Específicamente, el Artículo 4 de la Ley Núm. 104, supra, dispone que: "[l]as disposiciones de estas secciones serán también aplicables a aquellas agencias, instrumentalidades y corporaciones públicas independientes cuya facultad para demandar y ser demandadas no esté prevista por otras leyes". 32 L.P.R.A. sec. 3079.

pueden incluir las mismas condiciones, otras condiciones o no estar condicionadas, dependiendo de lo dispuesto por el legislador.

Por ejemplo, al crear la Autoridad de Energía Eléctrica mediante la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, 22 L.P.R.A. sec. 191 et seq.; la Autoridad de Edificios Públicos mediante la Ley Núm. 56 de 19 de junio de 1958, según enmendada, 22 L.P.R.A. sec. 901 et seq.; la Autoridad de Comunicaciones mediante la Ley Núm. 212 de 12 de mayo de 1942, según enmendada, 27 L.P.R.A. sec. 291 et seq.; la Autoridad de Teléfonos mediante la Ley Núm. 25 de 6 de mayo de 1974, según enmendada, 27 L.P.R.A. sec. 401, et seq.; la Autoridad de Tierras mediante la Ley Núm. 26 de 12 de abril de 1941, según enmendada, 28 L.P.R.A. sec. 241 et seq.; se estableció que todas tendrían la facultad de demandar y ser demandadas, sin imponer condiciones especiales ni límites de cuantía. El Estado renunció a su inmunidad del soberano de una forma general, tal y como lo hizo al redactarse el Artículo 404 del Código Político, supra.

Por otro lado, al crear la Junta de Planificación mediante la Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62 et seq., el Estado dispuso expresamente entre sus facultades que ésta podía demandar y comparecer ante todos los tribunales de justicia de Puerto Rico, representada por sus abogados o por cualquier abogado particular que contrate. 23 L.P.R.A. sec. 62j(2). Al renunciar a su inmunidad en esta situación, según surge del lenguaje del estatuto, el Estado no impuso condición alguna.[9]

También existe la situación especial del Departamento de Recreación y Deportes. Cuando se creó, éste retuvo las funciones, poderes, deberes y obligaciones de la Administración de Parques y

---

[9] En cuanto a la Junta de Calidad Ambiental, creada al amparo de la Ley Núm. 9 de 18 de junio de 1970, según enmendada, 12 L.P.R.A. sec. 1128 et seq., esta ley la autorizó a entablar acciones civiles de daños y perjuicios para recobrar el valor de los daños ocasionados al ambiente o recursos naturales, 12 L.P.R.A. sec. 1131(29), y acudir a los tribunales estatales y federales a solicitar cualquier remedio en acciones civiles, 12 L.P.R.A. sec. 1131(30). Aquí tampoco el Estado

Recreo Público.  3 L.P.R.A. sec. 442d.  En <u>Rivera Maldonado v. E.L.A.</u>, 119 D.P.R. 74 (1987), resolvimos que, debido a esta situación, el Departamento de Recreación y Deportes goza de personalidad jurídica restringida, lo que entraña una renuncia a la inmunidad soberana.  Id., pág. 82.  Esta renuncia a la inmunidad del soberano se hizo sin imponer condiciones.  Conforme a la letra del estatuto, la renuncia fue una general.

V

En conclusión, las renuncias que hace el Estado a su inmunidad como soberano son, por lo general, incondicionales.  De existir condiciones, hay que observar el lenguaje del estatuto en cuestión para determinar su alcance.  Asimismo, se debe tomar en cuenta que la tendencia moderna es a limitar la inmunidad del Estado, propiciando su renuncia.  En el caso del Artículo 404 del Código Político, supra, de su claro lenguaje surge que el Estado renunció de forma general e incondicional a su inmunidad.  En consecuencia, la Ley Núm. 104, supra, y los límites de cuantía allí establecidos no le aplican.  No debemos por fiat judicial imponer límites y condiciones donde no existen.

Por las razones antes expuestas, disentimos del criterio de la mayoría de este Tribunal.  Expediríamos el auto presentado y revocaríamos la sentencia emitida por el Tribunal de Circuito.

MIRIAM NAVEIRA DE RODON
Juez Asociada

---

limitó las cuantías a ser reclamadas y nada se dijo en cuanto a las demandas contra la Junta.