ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **MINERVA ALVARADO FIGUEROA y OTROS**<br><br>Apelados<br><br>v.<br><br>**MUNICIPIO AUTÓNOMO DE MOROVIS y OTROS**<br><br>Demandado<br><br>**UNIVERSAL INSURANCE COMPANY**<br><br>Apelante | KLAN202500364<br><br><br><br><br><br>Consolidado con | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo**<br><br>Civil Núm.: **MV2021CV00082**<br><br>Sobre: Accidente de Transito |
| **MINERVA ALVARADO FIGUEROA y OTROS**<br><br>Apelados<br><br>v.<br><br>**MUNICIPIO AUTÓNOMO DE MOROVIS y OTROS**<br><br>Demandado<br><br>**MAPFRE PRAICO INSURANCE COMPANY**<br><br>Apelante | KLAN202500477 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo**<br><br>Civil Núm.: **MV2021CV00082**<br><br>Sobre: Accidente de Transito |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2025.

El 29 de abril de 2025, compareció ante nos Universal Insurance Company (Universal) mediante un recurso de *Apelación* y solicitó que revoquemos la *Sentencia* emitida y notificada el 28 de febrero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI).[1] Por su parte, el 27 de mayo de 2025, el Municipio de Morovis (el Municipio) y MAPFRE PRAICO Insurance Company

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TPI, Entrada Núm. 168; *Apéndice de Universal,* págs. 1325-1386; *Apéndice del Municipio y MAPFRE,* págs. 248-308.

(MAPFRE) comparecieron mediante un recurso de *Apelación* y nos solicitan, igualmente, la revocación de la antedicha *Sentencia*.

Por medio del referido dictamen, el TPI, en esencia, declaró con lugar la *Demanda* por daños y perjuicios instada en el caso de epígrafe en contra de Universal, el Municipio y MAPFRE (en conjunto, parte apelante).

Por los fundamentos que expondremos a continuación, resolvemos confirmar en parte y revocar parcialmente la *Sentencia* apelada.

## I.

El presente asunto tiene su génesis el 30 de julio de 2021, cuando la señora Minerva Alvarado Figueroa, por sí y en representación del menor Kelvin F. Burgos Alvarado, el señor Elvin R. Burgos Alvarado, la Sucesión de Elvin F. Burgos Ortiz, el señor Rafael O. Burgos García y el señor Iván Burgos Ortiz (en conjunto, la parte apelada) instaron una *Demanda* por daños y perjuicios en contra del Estado Libre Asociado de Puerto Rico (el Estado), el Departamento de Transportación y Obras Públicas (DTOP), el Municipio, el señor Ramón Luis Díaz Rivera (señor Díaz Rivera), John Doe y las Compañías Aseguradoras X, Y, Z.[2]

Esencialmente, la parte apelada expuso que, el 31 de mayo de 2021, el señor Elvin F. Burgos Ortiz (causante) transitaba en un vehículo por la Carretera PR-155, en el barrio Rio Grande del municipio de Morovis, cuando, a la altura del kilómetro 41.8, se desprendió un tronco de un árbol ubicado cerca de la carretera y cayó encima del vehículo conducido por el causante. Asimismo, indicó que el señor Hussein Ishkirat (señor Ishkirat), toda vez que transitaba en la misma dirección del causante, presenció el evento

---

[2] SUMAC TPI, Entrada Núm. 1. *Apéndice de Universal,* págs. 1-9; *Apéndice del Municipio y MAPFRE,* págs. 1-9.

y, al acercarse al vehículo del señor causante luego del suceso, lo observó sangrando y presenció cuando falleció en el acto.

Además, sostuvo que el árbol que provocó el suceso se encontraba en una finca perteneciente al Estado, al Municipio y/o al señor Díaz Rivera, cercana a la vía de tránsito. De igual forma, esgrimió que la caída del árbol fue la causa directa de que el causante sufriera angustias físicas y mentales, así como una muerte agonizante, en adición a que provocó daños morales y económicos a la parte apelada. En ese sentido, arguyó que el Estado, el Municipio y el señor Díaz Rivera eran responsables solidariamente de los referidos daños bajo la figura de responsabilidad objetiva, por lo que demandaron una suma no menor de $3,000,000.00 por daños físicos y morales, así como una suma no menor de $583,000.00 por lucro cesante.

Tras varios incidentes procesales, el 20 de diciembre de 2021, la parte apelada presentó una *Primera Demanda Enmendada* a los fines de incluir a MAPFRE como demandada por concepto de ser aseguradora del Municipio cuando ocurrieron los hechos.[3]

Ese mismo día, el Estado, en representación del DTOP, presentó una *Contestaci[ó]n a Demanda.*[4] En síntesis, negó que el DTOP tuviera personalidad jurídica para demandar y ser demandado, así como cualquier responsabilidad por los daños aducidos por la parte apelada. De otro lado, entre otras defensas afirmativas, expuso que el Estado no es un garantizador absoluto de la seguridad de las personas que transitan en las vías públicas y no se exige que éstas, así como las aceras, se encuentren en perfectas condiciones.

---

[3] SUMAC TPI, Entrada Núm. 26; *Apéndice de Universal*, págs. 10-19; *Apéndice del Municipio y MAPFRE,* págs. 10-19.
[4] SUMAC TPI, Entrada Núm. 28; *Apéndice de Universal*, págs. 20-30; *Apéndice del Municipio y MAPFRE,* págs. 29-39.

Tras recibir la anuencia del TPI mediante una *Orden* emitida el 14 de marzo de 2022,[5] la parte apelada incoó, el 15 de marzo de 2022, una *Segunda Demanda Enmendada* a los fines de incluir a Universal como parte en el litigio y, en adición, expuso que entre el DTOP y el Municipio existía un acuerdo, intitulado "Convenio de Transferencia de Fondos para el Mantenimiento de Carreteras en el Municipio de Morovis", mediante el cual el Municipio se atribuyó las responsabilidades sobre el mantenimiento de las carreteras del Estado que cursan la jurisdicción del municipio de Morovis.[6]

Así las cosas, el 12 de abril de 2022, MAPFRE presentó una *Contestación a Demanda Enmendada.*[7] Esencialmente, admitió que responde de los daños alegados únicamente si, a su vez, el Municipio es legalmente obligado a responder de dichos daños, además de que su responsabilidad está sujeta a los límites y condiciones de la póliza de seguro que emitió a favor del Municipio. En específico, sostuvo que su responsabilidad se limitaba a $1,000,000.00 por ocurrencia, y $2,000,000.00 por agregado. Asimismo, esgrimió que, por información o creencia, el árbol que provocó la causa de acción no se encontraba en una propiedad bajo la jurisdicción y el control del Municipio.

Entre otras defensas, MAPFRE expuso que, de conformidad con la Ley Núm. 107 de 13 de agosto de 2020, según enmendada, mejor conocida como el *Código Municipal de Puerto Rico, infra* (Código Municipal) se prohibieron las reclamaciones por daños y perjuicios en contra de los municipios por accidentes ocurridos en carreteras estatales. Cónsono con ello, señaló que la Carretera PR-

---

[5] SUMAC TPI, Entrada Núm. 56. Notificada y archivada en autos el 15 de marzo de 2022.

[6] SUMAC TPI, Entrada Núm. 57; *Apéndice de Universal,* págs. 31-40; *Apéndice del Municipio y MAPFRE,* págs. 20-28.

[7] SUMAC TPI, Entrada Núm. 60; *Apéndice de Universal,* págs. 41-54; *Apéndice del Municipio y MAPFRE,* págs. 40-53.

155 es una vía estatal, por lo que el Municipio no responde por la negligencia imputada al Estado y al señor Díaz Rivera.

Ese mismo día, el señor Díaz Rivera interpuso una *Contestación a Segunda Demanda Enmendada*.[8] Esencialmente, negó que el árbol que causó el accidente estuviera en su propiedad, de manera que no era responsable civilmente de los daños alegados.

El 14 de abril de 2022, la parte apelada presentó una *Solicitud de Desistimiento sin Perjuicio en cuanto al ELA y el DTOP*.[9] A través del antedicho documento, solicitaron la autorización para desistir sin perjuicio del pleito entablado contra el Estado y el DTOP, y continuar en contra de Universal, su aseguradora.[10] De conformidad con lo anterior, el 29 de abril de 2022, el foro primario emitió y notificó una *Sentencia Parcial* en la que decretó el desistimiento y archivo sin perjuicio de la causa de acción en cuanto al Estado y al DTOP.[11]

Siendo así, el 20 de mayo de 2022, Universal presentó una *Contestaci[ó]n a Segunda Demanda Enmendada*.[12] En síntesis, negó responsabilidad por los daños aducidos más aceptó que el DTOP se encarga de la infraestructura vial del Estado. Asimismo, admitió que, para la fecha de los hechos, estaba en vigor el convenio entre el DTOP y el Municipio para el mantenimiento de carreteras en el municipio de Morovis. Expuso que el acuerdo tenía el propósito de que el Municipio se encargara del mantenimiento de las carreteras en Morovis, que incluía, entre otros, la limpieza de áreas verdes, la poda de árboles y la eliminación de ramas secas. De igual forma,

---

[8] SUMAC TPI, Entrada Núm. 61; *Apéndice de Universal*, págs. 55-61; *Apéndice del Municipio y MAPFRE*, págs. 69-75.

[9] SUMAC TPI, Entrada Núm. 63; *Apéndice de Universal*, págs. 62-63; *Apéndice del Municipio y MAPFRE*, págs. 76-77.

[10] Ello al palio del Artículo 20.030 de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, mejor conocida como el *Código de Seguros de Puerto Rico*, 26 LPRA sec. 2003.

[11] SUMAC TPI, Entrada Núm. 70; *Apéndice de Universal*, pág. 64; *Apéndice del Municipio y MAPFRE*, pág. 78.

[12] SUMAC TPI, Entrada Núm. 72; *Apéndice de Universal*, págs. 65-72; *Apéndice del Municipio y MAPFRE*, págs. 79-86.

aceptó que la Carretera PR-155 está bajo la jurisdicción del Estado, aunque negó que el árbol que causó el accidente estuviera en propiedad de éste.

Por su parte, el 11 de julio de 2022, el Municipio presentó una *Contestación a Segunda Demanda Enmendada*.[13] De entrada, rechazó que tiene control y jurisdicción sobre las áreas paralelas a la carretera. Asimismo, adujo que el árbol no se encontraba en un área que fuera propiedad del municipio y que el mantenimiento de dicha área no le correspondía. En adición, rechazó haber incurrido en negligencia que lo hiciere responsable de los daños aducidos y esgrimió que, conforme al Código Municipal, *infra*, se prohibieron las reclamaciones por daños y perjuicios en contra de los municipios por accidentes ocurridos en carreteras estatales.

El 18 de julio de 2022, MAPFRE interpuso una *Contestación a Segunda Demanda Enmendada* mediante la cual, en esencia, reiteró las alegaciones y defensas expuestas en su alegación responsiva a la primera demanda incoada.[14]

Tras varios pormenores procesales, el 17 de noviembre de 2023, la parte apelada instó una *Solicitud de Sentencia Sumaria Parcial*.[15] A través de ésta, propuso veintiocho (28) hechos incontrovertidos los cuales, esencialmente, aducían que el árbol estaba en propiedad del Estado y del señor Díaz Rivera, de manera que ambos eran responsables objetivamente, y de forma solidaria, de los daños alegados. Asimismo, que el Municipio y MAPFRE respondían, de igual manera, por virtud del convenio suscrito con el Estado.

---

[13] SUMAC TPI, Entrada Núm. 75; *Apéndice de Universal*, págs. 73-89; *Apéndice del Municipio y MAPFRE*, págs. 87-103.
[14] *Íd.*, Entrada Núm. 80; *Apéndice de Universal*, págs. 100-114; *Apéndice del Municipio y MAPFRE*, págs. 54-68.
[15] SUMAC TPI, Entrada Núm. 100; *Apéndice de Universal*, págs. 218-422; *Apéndice del Municipio y MAPFRE*, págs. 132-140.

En respuesta, el 18 de diciembre de 2023, Universal presentó una *Moci[ó]n en Oposici[ó]n a Solicitud de Sentencia Sumaria Parcial.*[16] Propuso diecinueve (19) hechos incontrovertidos y rechazó aquellos propuestos por la parte apelada que, en esencia, versaban sobre la manera en que sucedió el incidente y las condiciones en que se encontraba el área donde éste ocurrió. Asimismo, expuso que no procedía la disposición sumaria a favor de la parte apelada toda vez que su petición carecía de evidencia que fuera suficiente. Más bien, señaló que ésta era contradictoria e incongruente de manera que el foro primario no estaba en posición para resolver sumariamente el aspecto sobre responsabilidad.

De su parte, el 22 de diciembre de 2023, MAPFRE presentó una *Moción Presentando Posici[ó]n con respecto a la Solicitud de Sentencia Sumaria Parcial presentada por la Aprte [sic] Demandante.*[17] En síntesis, rechazó los hechos propuestos como incontrovertidos relativos a la forma en que ocurrió el accidente y las condiciones en que se encontraba el área donde éste sucedió, así como las obligaciones que surgieron del convenio suscrito.

Así las cosas, el 28 de diciembre de 2023, la parte apelada interpuso una *Réplica a Oposiciones de Universal y Mapfre y en Apoyo de la Solicitud de Sentencia Sumaria Parcial.*[18] Esencialmente, señaló que no eran necesarias las deliberaciones sobre negligencia puesto que la causa de acción instada era sobre responsabilidad objetiva. En ese sentido, indicó que era suficiente establecer la titularidad de la propiedad donde se encuentra el árbol y la relación causal entre su caída y los daños alegados para que procediera su petitorio de disposición sumaria.

---

[16] SUMAC TPI, Entrada Núm. 107; *Apéndice de Universal,* págs. 423-438.
[17] SUMAC TPI, Entrada Núm. 110; *Apéndice de Universal,* págs. 439-450.
[18] SUMAC TPI, Entrada Núm. 114; *Apéndice de Universal,* págs. 451-471.

Por otro lado, resaltó que Universal no presentó un informe de agrimensura a pesar de haberlo anunciado.[19] Consecuentemente, sostuvo que procedía aplicar la inferencia negativa conforme a la Regla 304 (5) de Evidencia, 32 LPRA Ap. VI, R. 304 (5). Especificó que el descubrimiento de prueba ya había culminado sin la presentación del informe pericial anunciado por Universal y ello justificaba la presunción de adversidad por supresión voluntaria de evidencia.

De su parte, el 18 de enero de 2024, el señor Díaz Rivera presentó una *Moción en Oposición a Solicitud de Sentencia Sumaria Parcial Revisada*.[20] En síntesis, sostuvo que existía una controversia sustancial sobre la ubicación del árbol que provocó el accidente y planteó que ello no podía ser resuelto por medio de una sentencia sumaria. Ante ello, el 19 de enero de 2024, la parte apelada presentó una *Réplica a Oposición del Codemandado, Ramón Díaz Rivera* en la que sostuvo que el señor Díaz Rivera se limitó a negar todos los hechos propuestos sin proveer evidencia que respaldara sus posturas.[21]

Así trabadas la solicitud y oposiciones a la disposición del caso por la vía sumaria, el 13 de febrero de 2024, el TPI celebró una vista argumentativa sobre los referidos escritos dispositivos, conforme surge de una *Minuta*,[22] y, tras justipreciar los argumentos esbozados, el 8 de abril de 2024, el foro *a quo* emitió una *Resolución*.[23]

---

[19] En específico, la parte apelada hizo referencia a que el 31 de julio de 2023, Universal presentó una *Moci[ó]n Solicitando Breve T[é]rmino Adicional para Rendir Informe Pericial* en la que informó sobre la contratación de un agrimensor cuyo informe pericial interesaba presentar. No obstante, debido a un padecimiento de salud, el agrimensor no pudo prepararlo a tiempo para ser presentado dentro del término establecido por el TPI de manera que solicitaron una prórroga para ello. *Véase* SUMAC TPI, Entrada Núm. 96.
[20] SUMAC TPI, Entrada Núm. 117; *Apéndice de Universal*, págs. 472-517.
[21] SUMAC TPI, Entrada Núm. 118; *Apéndice de Universal*, págs. 518-530.
[22] SUMAC TPI, Entrada Núm. 125.
[23] SUMAC TPI, Entrada Núm. 126; *Apéndice de Universal*, págs. 559-566; *Apéndice del Municipio y MAPFRE*, págs. 141-146. Notificada y archivada en autos el 9 de abril de 2024.

En esencia, rechazó emitir una disposición parcial del asunto por la vía sumaria tras entender que la ubicación del árbol así como las condiciones en las que se encontraba al momento del accidente, eran hechos esenciales en controversia. No obstante, realizó diecisiete (17) determinaciones de hechos incontrovertidos, entre los cuales determinó que entre el Municipio y el Estado se acordó un convenio, vigente al momento de los hechos, mediante el cual el Municipio asumió la responsabilidad de mantener las áreas verdes de la Carretera PR-155. En adición, que la finca perteneciente al señor Díaz Rivera colinda con la referida vía de tránsito y que, con relación a la carretera, las medidas del área perteneciente al Estado son de quince (15) metros o siete punto cinco (7.50) metros desde su centro al área de rodaje.

Así las cosas, y tras varios incidentes procesales, el 14 de noviembre de 2024, el foro primario emitió y notificó una *Orden* en la que dictó a las partes a que presentaran memorandos de derecho sobre la responsabilidad del Municipio y lo resuelto en *González Meléndez v. Municipio Autónomo de San Juan*, 212 DPR 601 (2023).[24] Particularmente, el TPI ordenó a las partes a que enfatizaran sobre las circunstancias en las que los municipios poseen un convenio con el DTOP mediante el cual se obliga al mantenimiento de las carreteras.

Tras ello, el 15 de diciembre de 2024, la parte apelada presentó una *Moción en Cumplimiento de Orden*.[25] En síntesis, aludió a que existen distinciones entre el asunto de epígrafe y *González Meléndez v. Municipio Autónomo de San Juan, supra.* Específicamente, señaló que los daños alegados en aquel caso resultaron de una caída provocada por unos tubos en una acera

---

[24] SUMAC TPI, Entrada Núm. 132; *Apéndice de Universal,* págs. 571-572; *Apéndice del Municipio y MAPFRE*, págs. 160-161.
[25] SUMAC TPI, Entrada Núm. 133; *Apéndice de Universal*, págs. 573-581; *Apéndice del Municipio y MAPFRE*, págs. 162-170.

estatal y el Municipio de San Juan presentó una certificación en la cual se estableció que dicha acera era una servidumbre de paso del DTOP, así como que los tubos que provocaron el accidente eran parte de señales de tránsito controladas por la agencia gubernamental central.

En adición, reseñó que el Tribunal Supremo de Puerto Rico no tuvo la oportunidad de considerar cómo la inmunidad aludida interactúa con situaciones en las que existe un convenio mediante el cual un municipio asume obligaciones específicas de mantenimiento. Lo anterior, según expuso la parte apelada, fue ilustrado a través de las disidencias las cuales señalan que el pronunciamiento de la mayoría del Máximo Foro judicial no considera los escenarios en los que, por convenio o contrato, los municipios asumen y ejercen funciones directas sobre las carreteras estatales.

Igualmente, arguyó que la Exposición de Motivos de la Ley Núm. 143 de 16 de septiembre de 2019, promulgada para enmendar la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, mejor conocida como la *Ley de Municipios Autónomos de Puerto Rico*, *infra* (Ley de Municipios Autónomos),[26] a los fines de reconocer la aludida inmunidad municipal, demuestra que la intención legislativa detrás de la enmienda fue proteger a los municipios del impacto económico por reclamaciones sobre infraestructuras que los municipios no controlan. Además, subrayó que la interpretación que proponía sobre la inmunidad se apoyaba en los principios de autonomía municipal y responsabilidad contractual del Código Municipal, *infra*.

---

[26] Cabe destacar que la Ley de Municipios Autónomos, *infra*, fue derogada por el Código Municipal, *infra*. No obstante, el articulado referente a la inmunidad municipal en ciertas acciones por daños y perjuicios se mantuvo inalterado y fue incorporado en la pieza legislativa vigente.

De su parte, el 16 de diciembre de 2024, MAPFRE presentó un *Memorando de Derecho*.[27] Expuso que la inmunidad conferida por el Código Municipal, *infra*, es una absoluta y el Más Alto Foro judicial refrendó que la ley no daba margen a una interpretación distinta. No obstante, reconoció que las disidencias en el caso generaron la discusión sobre si la inmunidad era una condicionada al control que ejerzan los municipios sobre las vías estatales, pero dicha posición fue derrotada por la mayoría del Pleno. En ese sentido, subrayó que el estado de derecho actual establecido por nuestro Tribunal Supremo debía respetarse.

Ese mismo día, Universal interpuso su *Memorando de Derecho*.[28] En síntesis, arguyó que en *González Meléndez v. Municipio Autónomo de San Juan, supra,* la responsabilidad imputada al Municipio de San Juan estaba sostenida en una norma jurisprudencial que reconocía la obligación de un municipio de preservar las carreteras en un buen estado de uso. Sin embargo, no se analizó el alcance de un acuerdo o convenio en el que el municipio relevó al Estado de responsabilidad, como sostiene ocurrió en el presente caso. En adición, señaló que MAPFRE no podía interponer la defensa de inmunidad reclamada toda vez que ésta constituía una defensa personalísima.

Tras varios incidentes,[29] el 14 de enero de 2025, el Municipio interpuso una *Moci[ó]n en Solicitud de Desestimaci[ó]n bajo la Regla 10.2(5) de Procedimiento Civil*.[30] En síntesis, reiteró los fundamentos esbozados en su *Memorando de Derecho* sobre la aplicabilidad de la

---

[27] SUMAC TPI, Entrada Núm. 134; *Apéndice de Universal*, págs. 582-592; *Apéndice el Municipio y MAPFRE*, págs. 171-181.

[28] *Íd.*, Entrada Núm. 135; *Apéndice de Universal*, págs. 593-597; *Apéndice del Municipio y MAPFRE*, págs. 182-186.

[29] Entre los que se destaca una *Réplica al Memorando de MAPFRE*, presentada por la parte apelada el 23 de diciembre de 2023, y una *Orden* emitida y notificada por el TPI el 26 y 27 del mismo mes y año, respectivamente, en la que tuvo la réplica instada por no puesta toda vez que había notificado su determinación de no admitir réplicas ni dúplicas a los memorandos de derecho. *Véase* SUMAC TPI, Entradas Núm. 136 y 137.

[30] SUMAC TPI, Entrada Núm. 142; *Apéndice de Universal*, págs. 598-603; *Apéndice del Municipio y MAPFRE*, págs. 187-192.

inmunidad municipal así como el planteamiento de que ésta es una absoluta conforme la norma jurisprudencial, y solicitó la desestimación de la causa de acción instada por la parte apelada.

Igualmente, ese mismo día, MAPFRE presentó una *Moci[ó]n en Solicitud de Desestimaci[ó]n al Amparo de la Regla 10.2(5) de Procedimiento Civil.*[31] De igual forma, reiteró que al Municipio le cobija una inmunidad absoluta en acciones sobre daños y perjuicios por accidentes en carreteras estatales de manera que no podía imputársele responsabilidad legal. Por consiguiente, expuso que, como el asegurado no es responsable jurídicamente, el TPI debía desestimar la causa en contra de MAPFRE, su aseguradora, en virtud de los términos de la póliza de seguros emitida.

En la misma fecha, la parte apelada instó una *Moción Solicitando se Tengan por No Presentadas las Mociones de Desestimación y/o en la Alternativa Término para Oponerse.*[32] Señaló que los petitorios de desestimación eran tardíos pues, conforme lo dictó el foro *a quo*, las partes tenían hasta el 26 de noviembre de 2023 para presentar mociones dispositivas.[33] Asimismo, resaltó que el Municipio fue emplazado el 16 de septiembre de 2021 y, sin embargo, optó por presentar una solicitud de desestimación años más tarde y a menos de un mes para el juicio.

A pesar de lo anterior, el 22 de enero de 2025, la parte apelada presentó una *Oposición a las Mociones de Desestimación.*[34] En esencia, reiteró que las solicitudes de desestimación debían ser denegadas por ser procesalmente tardías y que la interpretación del Municipio y MAPFRE sobre *González Meléndez v. Municipio Autónomo de San Juan, supra,* ignoraba distinciones fundamentales

---

[31] SUMAC TPI, Entrada Núm. 143; *Apéndice de Universal,* págs. 604-611; *Apéndice del Municipio y MAPFRE,* págs. 193-200.
[32] SUMAC TPI, Entrada Núm. 144; *Apéndice de Universal,* págs. 612-614.
[33] *Véase* SUMAC TPI, Entrada Núm. 89.
[34] SUMAC TPI, Entrada Núm. 147; *Apéndice de Universal,* págs. 615-789; *Apéndice del Municipio y MAPFRE,* págs. 201-211.

existentes entre aquel y el presente caso, así como que el Tribunal Supremo no consideró cómo la inmunidad municipal interactuaba con hechos similares al asunto de epígrafe.

En cuanto a MAPFRE, arguyó que la póliza de seguros emitida contempla reclamaciones relacionadas con la administración de carreteras estatales bajo convenios acordados. Asimismo, apuntaló que la póliza limita la capacidad de MAPFRE de invocar unilateralmente defensas basadas en inmunidad gubernamental, sino que requiere una autorización expresa de sus asegurados para ello.

En esa misma fecha, MAPFRE incoó una *Breve R[é]plica a Alegaci[ó]n de que la Solicitud de Desestimaci[ó]n al Amparo de la Regla 10.2(5) de Procedimiento Civil se Presenta de Forma Tardía* en la que arguyó que plantear que la demanda deja de exponer una reclamación que justifica la concesión de un remedio es una defensa privilegiada y, por ende, puede presentarse en cualquier momento, incluso, luego de iniciado el juicio.[35]

Ese mismo día, el TPI emitió y notificó una *Resolución Interlocutoria* mediante la cual denegó las solicitudes de desestimación.[36] Específicamente, el foro *a quo* indicó que la responsabilidad del Municipio sería evaluada de conformidad con las obligaciones asumidas mediante el convenio que suscribió con DTOP, y no bajo las disposiciones del Código Municipal.[37]

Así las cosas, el juicio en su fondo se celebró los días 4, 5, 6 y 7 de febrero de 2025. Por la parte apelada, testificaron el agente Edgar Carrero Comulada, de la Policía de Puerto Rico; el señor

---

[35] SUMAC TPI, Entrada Núm. 148; *Apéndice de Universal*, págs. 790-791.

[36] SUMAC TPI, Entrada Núm. 150; *Apéndice de Universal*, págs. 792-795; *Apéndice del Municipio y MAPFRE*, págs. 212-215.

[37] Cabe destacar que, el 30 de enero de 2025, el Municipio y MAPFRE acudieron ante el Tribunal de Apelaciones mediante una petición de *certiorari* para revisar la *Resolución Interlocutoria* emitida por el TPI. No obstante, esta Curia denegó expedir el auto discrecional solicitado mediante *Resolución*, emitida y notificada el 31 de enero de 2025, en el caso KLCE202500086. *Véanse Apéndice de Universal*, págs. 800-831, y *Apéndice del Municipio y MAPFRE*, págs. 216-247.

Hussein Ishkirat; el señor Carlos Roberto Rodríguez Ortiz, perito agrimensor; el señor Laredo González Sánchez, perito arbolista; el señor Jeffrey Glogiewicz, perito dasónomo; el señor Rafael O. Burgos García, padre del causante; los dos (2) hijos del causante; el doctor Juan A. Villeta Trigo, perito economista; la señora Minerva Alvarado Figueroa, viuda del causante; y el señor Iván Burgos Ortiz, hermano del causante. Por otro lado, Universal presentó como testigos al doctor Jaime L. del Valle Caballero, perito economista, y al señor Olvin L. Montalvo Cruz, ingeniero civil.[38]

Por otro lado, cabe destacar que, una vez la parte apelada culminó su desfile de prueba, la parte apelante y el señor Díaz Rivera solicitaron la desestimación del caso bajo la Regla 39.2(c) de Procedimiento Civil, *supra*.[39] Ante ello, el TPI declaró No Ha Lugar los petitorios en cuanto a la parte apelante y, una vez sometido el caso por todas las partes, declaró Con Lugar la desestimación en cuanto al señor Díaz Rivera.[40]

Justipreciado el caso ante su consideración, el 28 de febrero de 2025, el TPI emitió y notificó la *Sentencia* de la cual se apela, mediante la que declaró Ha Lugar la *Demanda* incoada.[41] Tras aquilatar la prueba testifical y documental desfilada, el foro *a quo* reincorporó las diecisiete (17) determinaciones de hechos que realizó

---

[38] Asimismo, cabe destacar que se admitió la siguiente prueba documental: **Exhibit 1** (fotografías tomadas por la Policía de Puerto Rico en la escena del accidente); **Exhibit 2** (Informe de Autopsia del Sr. Elvin Burgos Ortiz); **Exhibit 3** (*curriculum vitae* del Sr. Rodríguez Ortiz, perito agrimensor); **Exhibit 4** (informe pericial de agrimensura preparado por el Sr. Rodríguez Ortiz); **Exhibit 5** (*curriculum vitae* del Sr. González Sánchez, perito arbolista); **Exhibit 6** (informe pericial preparado por el Sr. González Sánchez); **Exhibit 7** (*curriculum vitae* del Sr. Glogiewicz, perito dasónomo); **Exhibit 8** (informe pericial preparado por el Sr. Glogiewicz); **Exhibit 9** (*curriculum vitae* del Dr. Villeta Trigo, perito economista); **Exhibit 10** (informe pericial preparado por el Dr. Villeta Trigo); **Exhibit 11** (Convenio de Transferencia de Fondos suscrito entre el DTOP y el Municipio); **Exhibit 12** (*curriculum vitae* del Dr. del Valle Caraballo, perito economista); y **Exhibit 13** (informe pericial preparado por el Dr. del Valle Caraballo). *Véanse Apéndice de Universal*, págs. 857-1324, y *Apéndice del Municipio y MAPFRE*, págs. 324-395.

[39] SUMAC TPI, Entrada Núm. 167.

[40] Sobre el señor Díaz Rivera, el foro *a quo* indicó que no podía vincularle la responsabilidad de que asumiera que el árbol en cuestión se encontraba en su terreno y que tenía la obligación de podarlo, cuando su finca estaba delimitada mediante verjas de alambre. *Véase* SUMAC TPI, Entrada Núm. 167, a la pág. 3.

[41] SUMAC TPI, Entrada Núm. 168; *Apéndice de Universal*, págs. 1325-1386; *Apéndice del Municipio y MAPFRE*, págs. 248-308.

en la *Resolución* emitida el 8 de abril de 2024,[42] y realizó ciento cincuenta y siete (157) de determinaciones de hechos adicionales referentes a la prueba presentada por la parte apelada, y veinticinco (25) determinaciones de hechos sobre la prueba presentada por la parte apelante, para un total de ciento noventa y nueve (199) determinaciones de hecho.

Referente al Estado, el TPI entendió probado que el árbol que provocó la muerte del señor causante se encontraba en propiedad de éste, conforme al análisis hecho por el perito agrimensor, señor Rodríguez Ortiz, cuyo testimonio, según resaltó, no fue controvertido por prueba pericial. Ante ello, le imputó responsabilidad objetiva al Estado por los daños sufridos por la parte apelada, de conformidad con las disposiciones de la Ley Núm. 55 de 1 de junio de 2020, según enmendada, mejor conocida como el *"Código Civil de Puerto Rico" de 2020, infra* (Código Civil). De igual forma, resolvió que la prueba desfilada ante sí demostró todos los elementos necesarios para imputarle responsabilidad civil bajo las disposiciones del Artículo 404 del *"Código Político de Puerto Rico" de 1902*, 3 LPRA sec. 422 (Código Político). Consecuentemente, resolvió que Universal, como aseguradora del Estado, y contra quien se incoó la acción, respondía por los referidos daños.

Por otro lado, en cuanto al Municipio, el foro *a quo* juzgó que su responsabilidad emanaba del marco estatutario general aplicable y de las obligaciones contractuales que asumió mediante el convenio suscrito con DTOP. Específicamente, resolvió que, de una interpretación armoniosa de las disposiciones contractuales, era forzosa la conclusión de que las responsabilidades a las que se comprometió el Municipio no eran exclusivamente las enumeradas

---

[42] SUMAC TPI, Entrada Núm. 126; *Apéndice de Universal*, págs. 559-566; *Apéndice del Municipio y MAPFRE*, págs. 141-146. Notificada y archivada en autos el 9 de abril de 2024.

en el convenio, sino todas aquellas actividades necesarias para garantizar el mantenimiento integral que asegurara la seguridad vial, en las cuales se incluía el mantenimiento y monitoreo de árboles que pudieran representar un riesgo para los transeúntes.

Igualmente, aplicó la inferencia adversa establecida en la Regla 304 (5) de Evidencia, *supra*, ante la omisión por el Municipio y MAPFRE de presentar un perito arbolista anunciado que testificaría, conforme reveló el Informe de Conferencia con Antelación a Juicio, que el acuerdo contractual no tenía objetivos bien definidos con respecto a la poda y control de vegetación.

Distinguió que, a diferencia de *González Meléndez v. Municipio Autónomo de San Juan, supra*, la responsabilidad del Municipio no se fundamentó en la ubicación geográfica del accidente dentro de los límites territoriales, sino de las obligaciones específicas voluntariamente adquiridas mediante un acuerdo contractual, el cual significó una renuncia a la inmunidad.

Respecto a la valoración de los daños, otorgó una compensación de $215,000.00 para la señora Alvarado Figueroa, $100,000.00 para cada uno de los hijos del señor Burgos Ortiz, $185,000.00 para el señor Burgos García, y $60,000.00 para el señor Burgos Ortiz. Con relación al lucro cesante, el TPI aplicó la proyección de ingresos en cuanto a la base salarial y expectativa de vida útil presentada por el doctor Villeta Trigo, y el incremento salarial anual presentado por el doctor del Valle Caballero, para una compensación de $576,559.00. Finalmente, determinó que la parte apelante incurrió en temeridad por obligar a la parte apelada a incurrir en gastos de litigación, a pesar de la responsabilidad claramente evidenciada, además de que no presentó prueba en su defensa para controvertir su responsabilidad. Por ello, impuso el pago de honorarios de abogado por la suma de $14,000.00.

No conteste con lo anterior, el 17 de marzo de 2025, MAPFRE y el Municipio interpusieron una *Moci[ó]n en Solicitud de Reconsideraci[ó]n*.[43] Allí, reiteraron que la inmunidad concedida por el Código Municipal, *infra*, y reconocida en *González Meléndez v. Municipio Autónomo de San Juan, supra,* es una absoluta.

En respuesta, el 25 de marzo de 2025, la parte apelada incoó una *Oposición a la Moción de Reconsideración*.[44] En esencia, arguyó que el planteamiento sobre la inmunidad ya había sido adjudicado por el foro primario y fue objeto de un recurso de *certiorari* ante el Tribunal de Apelaciones que fue denegado, por lo que constituía la ley del caso.

Por su lado, el 27 de marzo de 2025, Universal presentó una *Oposici[ó]n a Reconsideraci[ó]n*.[45] En esencia, se opuso a que el Municipio y MAPFRE fueran relevados de responsabilidad y arguyó, por el contrario, que la responsabilidad de ambas debía ser total. En especificó, esgrimió que el TPI actuó correctamente al resolver que el Municipio asumió voluntariamente las responsabilidades dispuestas en el convenio suscrito y, así, renunció a la inmunidad conferida por el Código Municipal, *infra*. Añadió que el Municipio relevó de responsabilidad al DTOP.

Trabado el asunto, el 27 de marzo de 2025, el foro primario emitió una *Orden* en la que declaró No Ha Lugar a la solicitud de reconsideración incoada.[46]

Inconforme, el 29 de abril de 2025, Universal interpuso un recurso de *Apelación* ante nos y señala al TPI por la comisión de los siguientes errores:

> **Primer Error**: Erró el TPI al apreciar la prueba e imponer responsabilidad al ELA, asegurado de Universal, tanto bajo

---

[43] SUMAC TPI, Entrada Núm. 181; *Apéndice de Universal*, págs. 1400-1412; *Apéndice del Municipio y MAPFRE*, págs. 309-321.
[44] SUMAC TPI, Entrada Núm. 186; *Apéndice de Universal*, págs. 1422-1431.
[45] SUMAC TPI, Entrada Núm. 187; *Apéndice de Universal*, págs. 1432-1440.
[46] SUMAC TPI, Entrada Núm. 188; *Apéndice de Universal*, págs. 1443-1444; *Apéndice del Municipio y MAPFRE*, págs. 322-323. Notificada el 28 de marzo de 2025.

el Código Civil como bajo el Código Político, por la caída del árbol que ocasionó el accidente donde falleció Elvin Burgos Ortiz, obviando que el Estado no es un garantizador absoluto de la seguridad de las personas que utilizan las carreteras públicas.

**Segundo Error**: Erró el TPI al apreciar la prueba, conferir credibilidad al perito de la parte demandante Juan A. Villeta Trigo y conceder $576,559.00 por concepto de lucro cesante.

**Tercer Error**: Erró el TPI al apreciar la prueba y avalar como salario la partida de beneficios marginales incluida en el cálculo de lucro cesante que hizo Juan A. Villeta Trigo, sobreestimando el ingreso de Elvin Burgos Ortiz, toda vez que los beneficios marginales que el perito utilizó constituyen impuestos al patrono y no ingresos que llegan al bolsillo del trabajador.

**Cuarto Error**: Erró el TPI al apreciar la prueba, en específico el Convenio de Transferencia de Fondos para el Mantenimiento de Carreteras entre el DTOP y el Municipio de Morovis, e imputarle 50% de responsabilidad a cada uno, a pesar de que el Municipio asumió responsabilidad total en virtud del referido contrato, relevando expresamente al DTOP.

**Quinto Error**: Erró el TPI al imponer temeridad a Universal Insurance Company y condenarle al pago de honorarios de abogado.

El 29 de julio de 2025, la parte apelada presentó un *Alegato de la Parte Apelada y en Oposición al Recurso de Universal Insurance Company*.

Por su parte, el 27 de mayo de 2025, el Municipio y MAPFRE instaron un recurso de *Apelación* e imputan al foro primario la comisión de los siguientes errores:

**Primer Error:**

**Erró el TPI al no desestimar la causa de acción en contra del municipio al no aplicar la inmunidad absoluta que tienen los municipios cuando el accidente objeto de la demanda ocurre en una carretera estatal, a pesar de que el mismo haya sido causado por acto u omisión de un funcionario, agente o empleado del municipio, conforme dispone el Art. 1.053(G) de la Ley Núm. 107-2020, según enmendada y la jurisprudencia interpretativa.**

**Segundo Error:**

**Erró el TPI en su apreciación de la prueba e imponer responsabilidad al Municipio por la caída del árbol que ocasionó el accidente.**

**Tercer Error:**

**Erró el TPI al no desestimar la causa de acción en contra de Mapfre, ya que siendo ésta la compañía de seguros del Municipio solo respondería si éste viene legalmente obligado a responder por los daños reclamados, lo cual en**

este caso no es responsable de la ocurrencia del accidente.

**Cuarto Error:**

**Erró el TPI al imponer temeridad al Municipio y a Mapfre condenándoles así al pago de honorarios de abogado.**

El 18 de julio de 2025, la parte apelada instó un *Alegato de la Parte Apelada y en Oposición al Recurso de MAPFRE Praico Insurance Company y el Municipio de Morovis.*

Igualmente, el 29 de julio de 2025, Universal presentó un *Alegato en Oposici[ó]n a Apelación de el Municipio de Morovis y MAPRE Praico Insurance Company.*

Con el beneficio de la comparecencia de todas las partes, la transcripción de la prueba oral así como la totalidad del expediente ante nos, procedemos a disponer del presente asunto no sin antes exponer el marco jurídico aplicable.

**II.**

**A.**

Es harto conocido que quien por culpa o negligencia le causa daño a otra, dicha persona viene obligado a repararlo. Artículo 1536 del Código Civil, 31 LPRA sec. 10801. La culpa o negligencia "consiste en la falta del debido cuidado, por no anticipar ni prever las consecuencias de un acto u omisión, que una persona prudente y razonable habría de prever en las mismas circunstancias". *Cruz Flores v. Hospital Ryder Memorial, Inc.*, 210 DPR 465, 484 (2022) (énfasis suprimido); *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 976-977 (2021).

En cuanto al daño, este se ha definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". *Camacho Rivera v. Richard Mitchell, Inc.*, 202 DPR 34, 42 (citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Bosch, 1983, T. 2, Vol. 3, pág. 92); *López v. Porrata Doria*, 169 DPR 135, 151 (2006).

De no existir daño o perjuicio, no existirá una obligación de indemnizar. *López v. Porrata Doria, supra*, pág. 151 (citando a J. Puig Brutau, *op. cit.*, pág. 91).

Los daños se dividen en patrimoniales y no patrimoniales. *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 505 (2009). Los primeros consisten en el menoscabo monetario sobre el patrimonio del perjudicado. *Íd.*, págs. 505-506. Por su parte, los daños no patrimoniales "son en principio aquellos cuya valoración en dinero no tiene la base equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria". *Íd.*, pág. 506 (citando a J. Santos Briz, *Tratado de Derecho Civil*, Barcelona, Bosch, 2003, T. III, pág. 457).

Ahora bien, además de la existencia de un daño real y un acto culposo o negligente, es esencial la existencia de un nexo causal para apoyar una reclamación en concepto de daños y perjuicios. La doctrina de causalidad dispone que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Nieves Díaz v. González Massas*, 178 DPR 820, 844 (2010) (citando a *Sociedad de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974)) (cita depurada). Este elemento es imprescindible en una causa de acción de daños y perjuicios, pues vincula al daño directamente con el hecho antijurídico. *Nieves Díaz v. González Massas, supra*, págs. 844-845. Además, el nexo causal está íntimamente ligado con la previsibilidad. *Íd.*, pág. 844.

No obstante, si bien una causa de acción en daños y perjuicios requiere, generalmente, un legitimado pasivo que haya incurrido en una acción u omisión negligente o culposa, nuestro ordenamiento jurídico contempla algunas situaciones en las que no siempre hay que probar la culpa o negligencia del que es llamado a responder.

Específicamente, nuestro Código Civil reconoce la llamada responsabilidad objetiva y dispone, en lo pertinente, que:

> **Responden por los daños resultantes, aunque no incurran en culpa o negligencia,** salvo cuando la causa del daño resulte de fuerza mayor:
>
> a) [...]
>
> [...]
>
> c) **el propietario, por la caída de árboles colocados en sitio de tránsito que amenazan con caerse**[.]
>
> [...]
>
> Artículo 1541 del Código Civil, 31 LPRA sec. 10806 (énfasis suplido).

Como vimos, se impone una responsabilidad en términos absolutos basada en el supuesto de que "todo el que mediante su actividad crea un riesgo de dañar a otro, debe ser siempre responsable de este daño, sin necesidad de ninguna culpa personal". *SLG Vázquez, Ibáñez v. De Jesús, Vélez,* 180 DPR 387, 406-407 (2010) (citando a *Gierbolini v. Employers Fire Ins. Co.,* 104 DPR 853, 857 (1976)) (cita depurada). Siendo así, el elemento de culpa o negligencia no es requisito de las acciones sobre daños y perjuicios al amparo de la doctrina de responsabilidad absoluta. *Dones Jiménez v. Aut. de Carreteras,* 130 DPR 116, 125 (1992); *Mendoza v. Cervecería Corona, Inc.,* 97 DPR 499, 512 (1969). Tampoco hay que atender el concepto del deber de previsión o diligencia propia de una persona prudente y razonable, pues ello es "el criterio central para que se adjudique responsabilidad por culpa o negligencia". *Cruz Flores v. Hospital Ryder Memorial Inc., supra,* pág. 484 (nota al calce omitida).

**B.**

Por otra parte, el lucro cesante es la interrupción, disminución o cese en los ingresos de una persona o sus causahabientes debido a que otra ocasionó la pérdida, total o parcial, de su capacidad productiva. Siendo ello así, sustituye los ingresos dejados de percibir

por una persona y presupone la existencia de ingresos al momento del accidente. *Mena Pamias v. Jiménez Meléndez,* 212 DPR 758, 772 (2023); *Díaz v. Alcalá,* 140 DPR 959, 972 (1996).

Para computarse, los tribunales deben utilizar la expectativa de vida útil de una persona, que no es otra cosa sino el número de años en que ésta va a generar ingresos. Su determinación no está sujeta a una fórmula rígida, sino que dependerá de varios factores, tales como la edad, el sexo, el estado de salud, la ocupación, el origen, la idiosincrasia y los hábitos del finado. *Suro v. ELA,* 111 DPR 456, 461-468 (1981). En dicho caso, el Tribunal Supremo de Puerto Rico estableció el método para computar el lucro cesante de un finado. Primeramente, se deberá computar el total de ingresos proyectados durante la vida útil de la persona. Luego, se deberá determinar el Ingreso Promedio Anual (IPA), del cual se deberá descontar lo correspondiente a los gastos propios del finado. El producto de dicho cómputo constituirá el Ingreso Promedio Anual Neto (IPAN). Por último, se debe reducir al valor presente, el cual se obtiene al multiplicar el IPAN, o el IPA, en el caso de que el agraviado quede incapacitado, por el factor de una tabla actuarial que corresponde a una inversión a 6% anual por el número de años proyectados de vida útil.

Cabe destacar que no es necesario que la prueba demuestre con precisión matemática los daños por lucro cesante, basta con que se ofrezca una base razonable que permita hacer una determinación prudente y no especulativa. *Rodríguez v. Ponce Cement Corp.,* 98 DPR 201, 219 (1969). Igualmente, nuestro Más Alto Foro judicial se ha expresado a favor del uso de la opinión pericial para cuantificar el lucro cesante de una manera justa y razonable, y se concede amplia discreción a los tribunales en la apreciación de esa prueba. No obstante, pueden adoptar su propio criterio y descartar la opinión de peritos, aunque sea técnicamente

correcta. *Culebra Enterprises Co. v. ELA*, 143 DPR 935, 952 (1997) (citando a *Prieto v. Maryland Co.*, 98 DPR 594, 623 (1970)).

**C.**

La Ley de Municipios Autónomos, 21 LPRA ant. sec. 4001 *et seq.*, "confirió a los municipios un mayor grado de gobierno propio y autonomía fiscal". *González Meléndez v. Municipio Autónomo de San Juan, supra*, pág. 614; *Muñiz Burgos, Inc. v. Mun. de Yauco*, 187 DPR 665, 675 (2013). La intención legislativa detrás de la aprobación de esta ley fue otorgarles a los municipios "los poderes y facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico". Exposición de Motivos de la Ley de Municipios Autónomos, *supra*. De hecho, fue indispensable ampliar esas facultades y responsabilidades municipales posteriormente con el propósito de que se cumpliera con las exigencias y necesidades actuales de los municipios. Lo anterior, pues "hoy día, las circunstancias económicas de gran parte de los municipios han cambiado sustancialmente". Exposición de Motivos del Código Municipal, 21 LPRA sec. 7001 *et seq.*

Cónsono con lo anterior, se enmendó la Ley de Municipios Autónomos, *supra*, a los efectos de añadirle el inciso (g) del Artículo 15.005 para proteger a los municipios contra reclamaciones o acciones por daños y perjuicios cuando ocurren accidentes en las carreteras o aceras que son propiedad del gobierno estatal.

La Asamblea Legislativa entendió que:

> Una acción de este tipo podría tener un impacto económico directo contra sus limitados recursos y su precaria situación fiscal. Por consiguiente, un incremento sostenido en las reclamaciones radicadas contra los municipios provocaría un aumento sustancial en los costos por concepto de seguros de responsabilidad pública.
>
> [...]
>
> Exposición de Motivos de la Ley Núm. 143 de 6 de septiembre de 2019.

Asimismo, "el Senado consideró injusto que los municipios tuvieran el deber de responder por daños y perjuicios debidos a los accidentes ocurridos en las carreteras y aceras que son dominio del Gobierno estatal sin tener bajo su control la preservación de dichas infraestructuras". *González Meléndez v. Municipio Autónomo de San Juan, supra,* pág. 615. Por su parte, la Cámara de Representantes "entendió meritorio proteger a los municipios contra acciones por daños y perjuicios cuando éstos ocurran en propiedad del gobierno estatal y sean el resultado de la falta de mantenimiento de este último a sus carreteras o aceras". *Íd.*

Ante la aprobación de la enmienda a la Ley de Municipios Autónomos, *supra,* el Artículo 15.003 quedó configurado. De igual modo, el Código Municipal, *supra,* el cual enmendó dicha ley, dispone en su Artículo 1.053 lo siguiente:

> No estarán autorizadas las acciones contra el municipio por daños y perjuicios a la persona o la propiedad por acto u omisión de un funcionario, agente o empleado de cualquier municipio:
>
> a)  [...]
>
> [...]
>
> g) **Cuando ocurran accidentes en las carreteras o aceras estatales**.
>
> Artículo 1.053 del Código Municipal, 21 LPRA sec. 7084 (énfasis suplido); *González Meléndez v. Municipio de San Juan, supra,* pág. 616.

Así, la Asamblea Legislativa "prohibió la presentación de reclamaciones en daños y perjuicios en contra de los municipios, en la medida en que esté presente cualquiera de los incisos enunciados". *González Meléndez v. Municipio Autónomo de San Juan, supra,* pág. 616.

Por otro lado, conforme al Código Político, se consideran como carreteras de Puerto Rico:

> Todos aquellos caminos o vías públicas que hayan sido o puedan ser construidos y estén entretenidos en la actualidad o en lo futuro, con fondos estaduales, o que estén incluidos en el plan general de los caminos que han de construirse y conservarse con fondos estaduales que pueda más adelante

ser aprobado y decretado por la Asamblea Legislativa de Puerto Rico.

Artículo 397 del Código Político, 3 LPRA sec. 419; *Rivera Jiménez v. Garrido & Co., Inc.*, 134 DPR 840, 851 (1993).

Asimismo, una *carretera estatal* está integrada, entre otros, por la zona de rodaje, el paseo y la **servidumbre de paso**. Artículo 1-02 (a) de la Ley Núm. 54 de 30 de mayo de 1973, según enmendada, mejor conocida como la *Ley de Administración, Conservación y Policía de las Carreteras Estatales de Puerto Rico*, 9 LPRA sec. 2102.

Por otro lado, el Secretario de DTOP tiene un deber de mantener las carreteras del Gobierno de Puerto Rico a su cargo en buen estado de conservación. Artículo 403 del Código Político, 3 LPRA sec. 421; *Rivera Jiménez v. Garrido & Co., Inc., supra*, pág. 851. Sin embargo, el Estado no es un garantizador absoluto de seguridad de los viajeros que utilizan las carreteras públicas. *Rivera Jiménez v. Garrido & Co., Inc., supra*, pág. 851; *Rivera v. Pueblo*, 76 DPR 404, 408 (1954).

Más bien, será responsable civilmente de los daños y perjuicios causados por desperfectos, falta de reparación o protección suficiente para la persona que viaje en cualquier vía de comunicación perteneciente al Estado y a cargo del DTOP. Artículo 404 del Código Político, 3 LPRA sec. 422; *Rivera Jiménez v. Garrido & Co., Inc., supra*, pág. 851; *Resto v. PR Telephone Co.*, 97 DPR 313, 319 (1969). Pero, el Estado no responde cuando se pruebe que los desperfectos fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos. Artículo 404 del Código Político, 3 LPRA sec. 422.

Cabe destacar que los daños que se reconozcan y concedan por la imposición de responsabilidad al Estado bajo la antedicha disposición, están limitadas a lo dispuesto en el Artículo 2 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, mejor

conocida como la *Ley de Reclamaciones y Demandas contra el Estado*, 32 LPRA sec. 3077.[47] De igual modo, es imprescindible un nexo causal entre los daños sufridos y las condiciones de la carretera, por lo que solamente habrá una obligación de indemnizar si los daños constituyen una consecuencia del hecho. *Rivera Jiménez v. Garrido & Co., Inc., supra*, págs. 851-852.

Expuesta la normativa jurídica aplicable, procedemos a disponer del asunto ante nuestra consideración.

**III.**

Inconforme, Universal, el Municipio y MAPRE acudieron de forma independiente, éstas últimas conjuntamente, en revisión ante nos. Por tratarse de la revisión de la misma *Sentencia* apelada, ambos casos fueron consolidados.

Por un lado, Universal señaló cinco (5) errores que aduce cometió el foro primario: (1) la imposición de responsabilidad al Estado al palio del Código Civil, *supra*, y el Código Político, *supra*; (2) la credibilidad conferida al perito economista presentado por la parte apelada y la cuantía concedida por lucro cesante; (3) la inclusión de una partida de beneficios marginales al cálculo del lucro cesante; (4) la apreciación hecha sobre el acuerdo suscrito con el Municipio e imputarle al Estado un cincuenta por ciento (50%) de responsabilidad a pesar de éste último ser relevado de ella por el primero; y (5) la imposición de honorarios de abogado por temeridad incurrida por Universal.

Por otro lado, el Municipio y MAPFRE plantearon cuatro (4) señalamientos de error que fueron cometidos, según aducen, por el TPI: (1) el no haber reconocido una inmunidad a favor del Municipio dispuesta por el Código Municipal*, supra*, y conforme a la

---

[47] La referida pieza legislativa limita las acciones por daños y perjuicios en contra del Estado hasta la suma de $75,000.00 y, cuando los daños se causen a más de una persona, o cuando sean varias causas de acción a las que tenga derecho un solo perjudicado, hasta la suma de $150,000.00.

interpretación jurisprudencial; (2) la imposición de responsabilidad al Municipio; (3) el no haber desestimado la causa de acción en contra de MAPFRE; y (4) la imposición de honorarios de abogado por temeridad incurrida por el Municipio y MAPFRE.

Luego de un análisis sosegado de los hechos pertinente, el expediente ante nos y la normativa aplicable, adelantamos que el foro *a quo* no incidió al imputarle responsabilidad civil al Estado y, por ende, condenar a Universal, su aseguradora, por los daños sufridos por la parte apelada ni se equivocó en el cómputo de lucro cesante. Sin embargo, erró al imputarle responsabilidad al Municipio y, consecuentemente, condenar a éste y a MAPFRE, su aseguradora. Nos explicamos.

En primer término, toda vez que éste dispone de su recurso de *Apelación*, discutiremos el error señalado por el Municipio y MAPFRE referente a la imposición de responsabilidad objetiva tras no aplicarse a favor del primero la inmunidad municipal.

Esencialmente, el Municipio y MAPFRE sostienen que el foro primario debió aplicar la inmunidad absoluta concedida por el Código Municipal, *supra*, e interpretada por el Tribunal Supremo de Puerto Rico en *González Meléndez v. Municipio Autónomo de San Juan, supra,* y, por ende, desestimar la causa de acción instada en su contra. Le asiste la razón.

Como vimos, mediante el Artículo 1.053 del Código Municipal, 21 LPRA sec. 7084, la Asamblea Legislativa "prohibió la presentación de reclamaciones en daños y perjuicios en contra de los municipios, en la medida en que esté presente cualquiera de los incisos enunciados" en el referido artículo incluyendo cuando los accidentes ocurren en carreteras estatales. *González Meléndez v. Municipio Autónomo de San Juan, supra*, pág. 616. En ese sentido, "el factor determinante para que los municipios no respondan en daños y perjuicios es la existencia del vínculo directo entre un

accidente y el hecho de que el mismo ocurra en una carretera o acera propiedad del Estado". *González Meléndez v. Municipio Autónomo de San Juan, supra,* pág. 620.

En el presente caso, son hechos incontrovertibles que el accidente fatal ocurrió en una carretera propiedad del Estado y que éste fue provocado por un árbol en la propiedad del Estado. Ello hace forzosa la activación del articulado que concede la inmunidad al Municipio, independientemente de si éste ejerció control o acordó un convenio para darle mantenimiento a las áreas verdes colindantes a las carreteras estatales, como lo interpretó el foro primario y arguyen tanto Universal como la parte apelada.

Específicamente sobre esto, nuestro Más Alto Foro judicial expresó que "**resulta inmaterial discutir si el [m]unicipio mantuvo la servidumbre de paso en condiciones razonables, pues el legislador limitó su responsabilidad como cuestión de política pública**". *González Meléndez v. Municipio Autónomo de San Juan, supra,* pág. 620 (énfasis nuestro). En ese sentido, si se cumple cualquiera de las instancias del Artículo 1.053 del Código Municipal, 21 LPRA sec. 7084, "se está ante una limitación para demandar a los municipios, para la cual no existe una excepción en ley. Se trata, pues, de una lista *numerus clausus* establecida por el legislador, la cual sólo puede ser variada por éste". *González Meléndez v. Municipio de San Juan, supra,* pág. 620 (bastardillas en el original). De ese modo, siendo el texto legislativo uno claro y libre de ambigüedad, el foro primario debió garantizar el cumplimiento del propósito inequívoco del legislador y aplicar la inmunidad municipal reconocida a favor del Municipio.[48]

---

[48] *Véase* el Artículo 19 del Código Civil, 31 LPRA sec. 5341 ("Cuando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu.").

Destacamos que, en el dictamen del Tribunal Supremo en *González Meléndez v. Municipio Autónomo de San Juan, supra,* se constaron disidencias que contemplan, precisamente, hechos como el de autos en el sentido de que es común que los municipios configuren acuerdos de mantenimiento de las carreteras estatales. Sin embargo, la interpretación de la mayoría del Pleno sobre la inmunidad municipal ignora esa realidad. Siendo así, no contamos con otra alternativa que no sea hacer eco del precedente establecido por la mayoría de nuestro Máximo Foro.

Cónsono con lo anterior, y por cuanto es harto sabido que "el asegurador solo será responsable, según una póliza de seguros de responsabilidad civil, si el asegurado ha sido culposo o negligente[,]" *SLG Albert-García v. Integrand Asrn.*, 196 DPR 382, 389 (2016), MAPFRE (el asegurador) no puede, a su vez, ser responsable toda vez que en el presente caso acontece una ausencia de responsabilidad civil por vía estatutaria de parte del Municipio (el asegurado).

Nótese que no se trata de si MAPFRE pueda o no invocar una inmunidad reconocida únicamente al Municipio, pues, ciertamente, las aseguradoras no pueden ampararse en la inmunidad que cobija a los municipios. Artículo 20.050 del Código de Seguros, 26 LPRA sec. 2004;[49] *Insurance Co. of PR v. Tribunal Superior*, 100 DPR 405, 408-409 (1972). Todo lo contrario. Reiteramos que la imposición de responsabilidad en su contra está vedada por el hecho de que su asegurado, el Municipio, no incurrió en culpa o negligencia ni tiene obligación o responsabilidad jurídica alguna por gozar de la inmunidad conferida por el Código Municipal, *supra. SLG Albert-García v. Integrand Asrn., supra,* pág. 394 ("[N]o procede una

---

[49] El referido articulado indica, en lo pertinente, que todas las pólizas de un seguro de responsabilidad en favor del Estado o sus municipios "deberán disponer que el asegurador no podrá aducir la defensa de inmunidad gubernamental en ninguna acción incoada contra el asegurador con arreglo a dicha póliza en virtud de la misma. [. . .]"

interpretación que pretenda imputar responsabilidad absoluta al asegurador aún en ausencia de negligencia o culpa del asegurado.").

Consecuentemente, procede revocar la *Sentencia* apelada en cuanto a la causa de acción en contra del Municipio y MAPFRE, y, así pues, desestimar con perjuicio la acción interpuesta en contra de éste. Asimismo, dejamos sin efecto la imposición de honorarios de abogado por temeridad en contra del Municipio y MAPFRE. Ante ello, no es necesario discutir el restante de los errores esgrimidos por el Municipio y MAPFRE.

Resuelto el asunto en cuanto al Municipio y MAPFRE, procedemos a disponer del recurso instado por Universal.

Primeramente, señala que el TPI erró al imputarle responsabilidad y obviar que el Estado no es un garantizador absoluto de la seguridad de quienes transitan en las carreteras públicas. No le asiste la razón.

De entrada, Universal pretende argüir que la falta de previsibilidad de las condiciones del árbol que provocó el accidente exime de responsabilidad al Estado. Sin embargo, lo anterior no es material ni relevante para las causas de acción imputadas en su contra. De conformidad con nuestro ordenamiento jurídico, la doctrina de responsabilidad objetiva al palio del Código Civil, *supra*, no exige probar culpa o negligencia que se deriven del incumplimiento del deber jurídico de prever un daño. Más bien, y pertinente al asunto de autos, la referida pieza legislativa imputa responsabilidad al propietario por la caída de árboles colocados en sitio de tránsito que amenacen con caerse, aunque no haya incurrido en culpa o negligencia. En ese sentido, si el Estado conocía o debió conocer que el árbol causaría un daño no es de pertinencia para la imposición de responsabilidad en su contra.

Nótese que el Código Civil, en su Artículo 1541, 31 LPRA sec.10806, reconoce como única eximente de responsabilidad

objetiva que la causa del daño haya sido provocada por fuerza mayor. Lo anterior es muy similar a la responsabilidad civil, igualmente objetiva, que se le impone al Estado bajo el Código Político, *supra.*

Específicamente, el Artículo 404 del Código Político, 3 LPRA sec. 422, imputa responsabilidad civil de daños causados por los desperfectos, la falta de reparación o de protección suficiente de quienes transiten en vías estatales y a cargo del DTOP, excepto cuando se pruebe que los desperfectos fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos. Cabe destacar que la visibilidad de los desperfectos no tiene que demostrarse. Dicha excepción le incumbe al Estado establecerla para, así, ser eximido de responsabilidad civil. *Pérez Piñero v. ELA*, 105 DPR 391, 397-398 (1976) (Dávila, opinión concurrente).

Destacamos que, en el presente caso, el Estado no demostró la existencia de elementos cuya violencia pudieran haber causado la caída del árbol. De hecho, el testigo ocular del suceso, el señor Ishkirat, declaró que antes de que el árbol cayera y provocara la muerte del causante, el ambiente estaba tranquilo.[50] En ese sentido, no se encuentra presente la única circunstancia por la cual el Estado pudiera haber sido eximido de la responsabilidad objetiva, a saber: una fuerza mayor, conforme al Código Civil, *supra*, o la violencia de los elementos, conforme al Código Político, *supra.*

Asimismo, Universal cuestiona que no se estableció la ubicación del árbol antes de ocurrir el accidente. Específicamente, señala que el perito de la parte apelada ubicó el centro del árbol a un centímetro fuera de propiedad privada.

---

[50] Transcripción de la prueba oral (TPO), pág. 73, líneas 5-9.

Igualmente, señala que el perito arbolista y el perito dasónomo, el señor Laredo González y el señor Glogiewicz, respectivamente, evaluaron el árbol un año posterior a la fecha del accidente, declararon que no era posible determinar las características y el estado de salud del árbol, que el área geográfica pudo acelerar el deterioro de la madera y que existen miles de árboles en Puerto Rico, lo cual imposibilita al Estado de mantener vigilancia y control sobre todos ellos.

Los argumentos planteados en cuanto a las observaciones y declaraciones del señor Laredo González y el señor Glogiewicz, no arrojan dudas en cuanto a la responsabilidad del Estado toda vez que no sugieren la existencia de las únicas circunstancias por las que, reiteramos, el Estado pudiera ser eximido de responsabilidad objetiva: que la caída del árbol fue provocada por una causa mayor o por la violencia de los elementos.

En particular, Universal apuntaló en su *Alegato Suplementario de la Parte Apelante Universal Insurance Company* que no hubo un examen del árbol en una fecha cercana al suceso que le permitiera al TPI establecer qué ocasionó la caída del árbol o cuál era su condición, previo a la caída, y ello hizo insuficiente la facultad del foro primario para imponerle responsabilidad. Además de señalar que el testigo ocular, el señor Ishkirat, declaró en cuanto al ambiente tranquilo durante los momentos previos al suceso, reiteramos que le correspondía al Estado probar que lo que ocasionó la caída fue una causa mayor o la violencia de los elementos, así como la falta de tiempo suficiente para remediar el desperfecto que causare la caída del árbol.

Establecido ello, es preciso discutir lo relativo a la ubicación del árbol toda vez que ello incide sobre la responsabilidad del Estado por ser uno de los elementos de la causa de acción de responsabilidad objetiva.

Según obra del expediente ante nos, la ubicación del árbol fue establecida mediante prueba pericial sobre agrimensura. Particularmente, el perito agrónomo detalló, a través de su informe y testimonio, que el centro del tronco del árbol se encontró a 7.49 metros del centro de la carretera PR-155, dentro del límite de 7.50 metros desde el centro de la carretera a ambos extremos. Cabe destacar que la prueba pericial sobre agrimensura no fue controvertida o impugnada mediante prueba pericial, sino confrontada por medio de contrainterrogatorio. Sin embargo, no surge del mismo ninguna razón por la cual quedemos convencidos de que la ubicación del árbol se encuentre fuera de la jurisdicción y el control del Estado.

Lo anterior dispone, igualmente, del cuarto señalamiento de error de Universal. En específico, sostiene que el Municipio liberó al Estado de responsabilidad conforme al convenio suscrito entre ambos y, por ende, no le correspondía compartir solidariamente la responsabilidad con el Municipio, según juzgó el foro primario. No le asiste la razón.

Como vimos, en el caso de autos la parte apelada presentó todos los elementos necesarios para sostener una causa de acción por responsabilidad objetiva bajo el Código Civil, *supra*, y el Código Político, *supra*, en contra del Estado. A la par, se encuentran presentes las circunstancias necesarias para activar la inmunidad municipal conferida por el Código Municipal, *supra*, y conforme ha sido interpretada por el Tribunal Supremo de Puerto Rico.

No es correcta la interpretación del TPI en cuanto a que el análisis de *González Meléndez v. Municipio Autónomo de San Juan, supra*, se limitó a situaciones donde la única conexión del municipio con el área donde ocurrió el accidente era su ubicación geográfica dentro de los límites municipales. Según se desprende de la *Opinión*, parte de los argumentos esbozados por las partes fue sobre quien

ejercía el control y el mantenimiento de la acera en cuestión en aquel caso. Sobre ello, el Tribunal Supremo expresó que, y reiteramos, "resulta inmaterial discutir si el [m]unicipio mantuvo la servidumbre de paso en condiciones razonables, pues el legislador limitó su responsabilidad como cuestión de política pública". *González Meléndez v. Municipio Autónomo de San Juan, supra*, pág. 620. Es decir, el Máximo Foro efectivamente razonó sobre el planteamiento acerca del ejercicio de control y mantenimiento del área estatal en donde ocurre un accidente torticero y justipreció que ello no invalidaba el efecto jurídico de la inmunidad municipal conferida por el Código Municipal, *supra.*

Ese mismo raciocinio lleva a concluir, forzosamente, que el convenio mediante el cual, en el presente caso, el Estado delegó los trabajos de mantenimiento de las carreteras estatales en Morovis, no constituyó un traspaso de la responsabilidad civil impuesta al Estado, la cual contempla excepciones específicas ni, al otro extremo, abrogó la inmunidad municipal "para la cual no existe una excepción en ley." *González Meléndez v. Municipio Autónomo de San Juan, supra*, pág. 620. Por consiguiente, no correspondía bifurcar en partes iguales, y en solidaridad, la responsabilidad entre el Estado y el Municipio, como lo dispuso el TPI.

Por otro lado, Universal cuestiona la credibilidad conferida por el foro *a quo* al perito economista presentado por la parte apelada y la cuantía concedida por lucro cesante, así como los beneficios marginales incluidos en el cómputo de este, como segundo y tercer señalamiento de error, los cuales, por estar íntimamente relacionados, discutiremos en conjunto.

Específicamente, estima que los beneficios marginales que propuso el perito economista de la parte apelada, doctor Villeta Trigo, por pagos al Seguro Social, seguro por desempleo, SINOT y Fondo del Seguro del Estado, constituyeron en una

sobrevalorización del salario del causante. Sin embargo, una lectura de la *Sentencia* apelada refleja que **ninguna de las partidas referidas sobre beneficios marginales** fue incluida en el cómputo realizado por el foro primario. Todo lo contrario. El TPI rechazó todos los beneficios marginales propuestos por el doctor Villeta Trigo y solo incluyó la aportación patronal al plan médico, un beneficio marginal que fue aceptado tanto por el doctor Villeta Trigo **como por el perito economista de Universal, el doctor del Valle Caballero**. En adición, el foro *a quo* no acogió el incremento salarial anual de 3.2% propuesto por el doctor Villeta Trigo sino el incremento de 1% propuesto por el doctor del Valle Caballero.

Primeramente, el TPI realizó un análisis diferenciado entre los ingresos pretéritos y las proyecciones futuras. En específico, el periodo de ingresos pretéritos fue de junio de 2021 (fecha a partir de la cual comenzaría a trabajar en el empleo cuya oferta aceptó antes de fallecer) hasta diciembre de 2024 (justo antes de que comenzara el juicio en su fondo del presente caso) y tuvo como base salarial $39,478.00, conforme a la oferta de empleo que el causante había aceptado. A ello le descontó una tasa de 33% por concepto de gastos personales.

Por otro lado, el periodo de proyecciones futuras abarcó desde enero de 2025 hasta la fecha en que el causante hubiera alcanzado la edad de 70 años, es decir, junio de 2041. Nuevamente, tomó como base el salario conforme a la oferta de empleo aceptada y aplicó el 1% de incremento salarial anual (propuesto por el perito economista de Universal), descontó las tasas de 33% y 6%, por concepto de gastos personales y ajuste al valor presente, respectivamente, en adición a que reconoció la aportación patronal al plan médico como beneficio marginal (aceptado por el perito economista de Universal) de $4,573.00 en 2021 y de $6,705.00 de 2022 en adelante.

Establecido lo anterior, colegimos que la metodología empleada por el foro primario, lejos de ser inadecuada y desajustada, fue producto de un ejercicio concienzudo, mesurado e independiente de análisis sobre las propuestas y observaciones de los peritos expertos en la contabilización de lucro cesante de ambas partes. Contrario a lo que aduce Universal, la determinación del TPI sobre el lucro cesante no fue producto de las propuestas y observaciones del perito economista de la parte apelada, sino que se nutrió de las propuestas tanto del perito de la parte apelada como del perito de Universal.

Destacamos que "es el foro primario el que tiene contacto directo con la prueba testifical presentada y, por ende, el que está en mejor posición de emitir un juicio sobre la valorización de los daños". *Mena Pamias v. Jiménez Meléndez, supra,* pág. 774. Es por ello que los foros revisores no debemos intervenir con las determinaciones de hechos de los foros de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, consecuentemente, abuso de discreción, o cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Íd.* Toda vez que ninguno de los referidos factores se encuentra presente, no procede que intervengamos con la determinación del TPI y la cuantía concedida por lucro cesante.

Como último señalamiento de error, Universal cuestiona que se le hayan impuesto honorarios de abogado por temeridad.

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. La temeridad, a su vez, consiste en aquellas "actuaciones en que un litigante promueve un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer

valer sus derechos". *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 147 (2022); *Pérez Rodríguez v. López Rodríguez*, 210 DPR 163, 192-193 (2022). **El propósito es penalizar al litigante perdidoso que por su "obstinación, terquedad, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, los gastos, el trabajo y los inconvenientes de un pleito".** *Pérez Rodríguez v. López Rodríguez, supra,* pág. 193 (citando a *PR Oil v. Dayco*, 164 DPR 486, 511-512 (2005)) (énfasis suplido). Su concesión, no obstante, recae en la sana discreción del tribunal. *SLG González-Figueroa v. SLG et al., supra*, pág. 150; *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 277 (2021); *Torres Vélez v. Soto Hernández,* 189 DPR 972, 993 (2013).

Tan pronto un tribunal de instancia estime que exista temeridad, este viene obligado a imponer honorarios. *Pérez Rodríguez v. López Rodríguez*, supra, pág. 192-193; *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 211 (2013). Asimismo que la determinación de temeridad descansa en la sana discreción del tribunal sentenciador. *Pérez Rodríguez v. López Rodríguez, supra*, pág. 192; *PR Oil v. Dayco, supra,* pág. 511; R, Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 436.

Los foros apelativos, en consecuencia, solo deben intervenir con la imposición de honorarios cuando medie un claro abuso de esa discreción. *Meléndez Vega v. El Vocero*, *supra*, pág. 211; *Rodríguez de Oller v. TOLIC*, 171 DPR 293, 312 (2007). De igual forma, si se realizan planteamientos complejos y novedosos aun no resueltos en nuestra jurisdicción; o si poseen argumentos para rebatir lo que sostiene la parte contraria. *Pérez Rodríguez v. López Rodríguez, supra*, pág. 193; *Gómez Márquez v. Periódico El Oriental, Inc.*, 203 DPR 783, 807 (2020).

Un análisis concienzudo del expediente ante nos, no nos mueven a intervenir con la determinación del foro primario de imponer honorarios de abogado en contra del Estado toda vez que no encontramos ápice que refleje un abuso de discreción por parte del foro *a quo* en dicha determinación. Por consiguiente, brindamos entera deferencia al foro primario en cuanto a la imposición de honorarios y colegimos que no se cometió el error.

**IV.**

Por las razones discutidas anteriormente, confirmamos en parte y, por ende, revocamos parcialmente la *Sentencia* apelada.

Específicamente, revocamos la determinación del TPI en cuanto a la imposición de responsabilidad al Municipio y, por consiguiente, a MAPFRE, así como la imposición de honorarios de abogado por temeridad a éstas. Por otro lado, confirmamos el dictamen en cuanto a la imposición de responsabilidad, los daños y honorarios en contra de Universal, como aseguradora del Estado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones